UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROSA SLY,
DEVONA HOLLINGSWORTH,
    Plaintiffs,                                Case No: 8:17-cv-1868-T-AAS

v.

ROBERT WILKIE, Secretary
DEPARTMENT OF VETERANS AFFAIRS
    Defendant.
_____/

## PLAINTIFFS' REPLY TO DEFENDANT'S MEMORANDUM OF LAW REGARDING *Babb v. Wilkie*

Plaintiffs, Rosa Sly and Devona Hollingsworth, by and through their undersigned attorney, hereby file this Reply to Defendant's Memorandum of Law Dkt. 104 Regarding *Babb v. Wilkie,* No. 18-882, 589 U.S. __, 140 S.Ct. 1168 (U.S. Apr. 6, 2020) (*Babb v. Wilkie*). Summary judgment has been denied so the discussion which follows will impact jury instructions and the material adverse actions and hostile work environment (HWE) claims.[1]

    A.    *Babb v. Wilkie*

The Government's arguments ignore U.S. Supreme Court case law concerning when burden shifting should occur and cases establishing that the mixed-motive burden-shifting test determines "but-for" causation.

The Government attempts to convince the court that the Supreme Court explicitly adopted a "but for" standard that prevents shifting the burden to a defendant to prove it would have made the same decision absent an illegal motive. It relies upon *Gross v. FBL Fin. Servs.,* 557 U.S. 167

---

[1] Status of Eleventh Circuit Treatment of *Babb v. Wilkie.* Plaintiffs will stand on their prior Memorandum and Supplemental filings except to note we filed the Petition for Rehearing and Rehearing En Banc and the Eleventh Circuit ordered the Secretary to respond within 14 days. The government requested an extension of time. No order has been issued.

(2009), a private-sector ADEA decision, to assert that in "but-for" cases the "plaintiff retains the burden of persuasion." Dkt.104 p.6/18. The Government fails to reconcile its argument with the Supreme Court's rejection of *Gross* in *Babb* due to the critical language in the federal employee statutes ("made free from any discrimination based on age") which is very different than the nonfederal sector ADEA. 140 S.Ct. at 1175-76. It describes the statute at issue in *Gross,* 29 U.S.C. § 623(a) as "couched in very different terms" and states that the critical language in the federal employee ADEA statute, which is identical to the critical language in the federal employee Title VII language, was "markedly different from the statutes at issue in *Gross* and *Nassar.*"[2] *Id.*

More importantly, *Babb* interpreted the federal-sector statutory language in a manner recognizing a classic mixed-motive case in which a plaintiff can establish that an illegitimate motive under the statute was a part of or a consideration in the decision making process. *Id.* at 1171-1174. That interpretation inherently creates a statutory mixed-motive case when the Government asserts other seemingly lawful reasons motivated the ultimate personnel action. In mixed-motive cases, burden shifting within a "but-for" causation analysis has been historically required in employment cases. *Texas v, Lesage,* 528 U.S. 18, 20-22 (1999); *Mt. Healthy Cn'ty Bd. of Ed. v. Doyle*, 429 U.S. 274, 285-7 (1977); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977); *N.L.R.B. v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401-402 (1983); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 230, 241-249 (1989).

In adopting burden shifting in a mixed motive Title VII case, the Supreme Court's opinion in *Price Waterhouse,* [490 U.S. at 249-50] relied in part on *Mt. Healthy* and upon its decision in *Transportation Management,* 462 U.S. at 400, in which that Court stated:

---

[2] *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338 (2008) was a Title VII private-sector non-burden shifting retaliation decision.

> "[t]he employer is a wrongdoer, he has acted out of a motive that is declared illegitimate by the statute. It is fair that he bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing."

Previously, *Mt. Healthy* reversed a lower court ruling when it considered burden shifting in a First Amendment employment case based upon its analysis of criminal cases essentially addressing the taint from various constitutional violations in which the wrongdoer, i.e., the government, had to carry the burden of persuasion on the freedom from taint. 429 U.S. at 285-87.

The Court in *Babb v. Wilkie* described the illegitimate motive when it held that "[t]he plain meaning of the critical statutory language ('made free from any discrimination based on age') demands that personnel actions be untainted by any consideration of age." 140 S.Ct. at 1171. Thus, when describing remedies, *Babb v. Wilkie's* selection of *Mt. Healthy* and *Lesage* is entirely fitting because they address the finding of an illegitimate motive and the judicial response of shifting the burden of persuasion to the wrongdoer. The employer is, in essence, required to prove the taint was removed by showing it would have made the same decision absent any improper motive. Thus, after *Babb*'s interpretation of the critical statutory language, if an illegitimate motive is shown to have played any part in the decision-making process, i.e., a "mixed motive," analysis of "but-for" causation inherently shifts the same decision burden to the employer.

The Supreme Court has often grappled with burden shifting in constitutional and other statutory retaliation or discrimination claims. Some cases in Appendix A apply this burden shifting and others distinguish it when considering circumstances where the Court believes there should not be burden shifting. In the latter, the Court uses a *Gross* or *Nassar* approach and leaves the burden of persuasion with the plaintiff throughout the case. Conversely, in *Babb*, it cites *Mt Healthy* and *Lesage* and rejects the application of *Gross* and *Nassar*. More than a dozen Supreme Court cases

3

set out in Appendix A refer to *Mt Healthy* as a "but for" causation standard applicable in the right circumstances.[3] We submit the Court chose *Lesage* and *Mt Healthy* because it read the statutory language as reflecting Congress' special desire to protect federal employees with the "made free from any discrimination based on . . ." language. That broad language is contained in the federal sector ADEA and Title VII statutes and inherently encompasses mixed-motive claims.

The Government offers a number of reasons to ignore the fact that *Babb v. Wilkie* relied upon *Lesage* and *Mt. Healthy,* and not a *Gross* or *Nassar* type but-for case, when discussing remedies.  First, throughout it focuses on the Court's use of the term "but for" as precluding a complete reading of the two cases. The Supreme Court has historically recognized the use of burden shifting to determine "but-for" causation in mixed-motive cases. In employment and certain other cases, the Court has often applied the *Mt. Healthy* test. In *Nieves v. Bartlett,* 139 S. Ct. 1715, 1722-23 (2019) the Court explained:

> For a number of retaliation claims, establishing the causal connection between a defendant's animus and a plaintiff's injury is straightforward. Indeed, some of our cases in the public employment context "have simply taken the evidence of the motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other," shifting the burden to the defendant to show he would have taken the challenged action even without the impermissible motive. *Hartman*, 547 U.S. at 260, 126 S.Ct. 1695 (citing *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 658; *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 270, n.21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

---

[3] For example, arrests, prosecutions and job discrimination or retaliation involve areas where the Supreme Court has had to describe methods of analysis which help one understand how the Court approaches mixed-motive causation issues. The conflicting material issue is generally whether a plaintiff must disprove the defendant's reason, or the defendant must prove the "same decision defense". Thus, several cases in Appendix A are cases challenging an arrest or prosecution in which the plaintiff virtually always has to disprove the government's reason for acting- probable cause a crime was committed-because of the circumstances surrounding arrests or prosecutions. *But see Lozman v. City of Riviera Beach, Fla.,* 138 S.Ct. 1945, 1947-48 (2018) (applying *Mt. Healthy,* rather than *Hartman v. Moore,* to an arrest where evidence of an official policy to retaliate existed. Thus, City had to prove the same decision defense and Lozman did not have to prove a lack of probable cause.) These cases often discuss *Mt. Healthy* but generally distinguish their circumstance. Conversely, these cases recognize *Mt. Healthy* is followed in employment cases and certain other statutory and constitutional cases where mixed motives are involved.

In *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006) the Court stated:

> It is clear, moreover, that the causation is understood to be but-for causation, without which the adverse action would not have been taken; we say that upon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate, he would have taken the action complained of (such as firing the employee). See *Mt. Healthy*, 429 U.S., at 287, 97 S.Ct. 568. If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. See *ibid.*

Second, the Government argues that the Court did not intend to sanction *Mt. Healthy* as the applicable causation test because its cite to *Mt. Healthy* was not the precise page (287) containing the complete *Mt. Healthy* test. Dkt. 104 p.7/18. However, this claim ignores that the page cited, 285, frames the key issue of whether wrongdoer should be held fully responsible based upon the illegitimate act without giving the wrongdoer a chance to rebut the taint. Further, the Government knows that the Court cited *Mt. Healthy* after first citing *Lesage*. *Lesage* is a racial-discrimination employment case in which the Supreme Court applies the full *Mt. Healthy* citing the exact page (287) cited in Plaintiffs' initial memorandum. *Lesage* states 528 U.S. at 20-21:

> Under *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), even if the government has considered an impermissible criterion in making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration. *See id.*, **at 287**, 97 S.Ct. 568. See also *Crawford–El v. Britton*, 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Board of Comm'rs, Wabaunsee Cty. v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). Our previous decisions on this point have typically involved alleged retaliation for protected First Amendment activity rather than racial discrimination, but that distinction is immaterial. **The underlying principle is the same: The government can avoid liability by proving that it would have made the same decision without the impermissible motive.**

Third, the Government asserts that *Babb v. Wilkie* is not a constitutional case and the Court rejected applying *Mt. Healthy* to statutory claims in *Gross*. Dkt. 104 p.7-8/18. While *Lesage* did

involve a constitutional racial discrimination claim, *Mt. Healthy's* burden-shifting approach has been utilized in several areas other than constitutional cases. Neither *Babb v. Willkie* nor *Arlington Heights* (cited in *Hartman, supra.*) are constitutional claims and many of the cases cited in Appendix A are not. *See, e.g., Transp. Mgmt.; Price Waterhouse. Transportation Management* involved a decision under the National Labor Relations Act where the Supreme Court referenced *Mt. Healthy* several times in reversing the First Circuit's opinion that burden shifting to the employer was improper, just like the Government argues here, because §10(c) of the Act placed the ultimate burden on the General Counsel of the NLRB. 462 U.S. at 401. As mentioned, the Supreme Court pointed out the employer acted with a motive made illegitimate by the statute interfering or discriminating for engaging in union activity.  It also stated:

> The Court of Appeals was quite correct, and the Board does not disagree, that throughout the proceedings, the General Counsel carries the burden of proving the elements of an unfair labor practice. Section 10(c) of the Act, 29 U.S.C. § 160(c), expressly directs that violations may be adjudicated only "upon the preponderance of the testimony" taken by the Board.  The Board's rules also state "the Board's attorney has the burden of pro[ving] violations of Section 8." 29 C.R.F. § 101.10(b). We are quite sure, however, that the Court of Appeals erred in holding that § 10(c) forbids placing the burden on the employer to prove that absent the improper motivation he would have acted in the same manner for wholly legitimate reasons.

Without considering *Transportation Management* or *Price Waterhouse,* the Government claims *Mt. Healthy* was rejected as a test by the Supreme Court in *Gross* because it was a "statutory case." However, it ignores that the dicta it has quoted from *Gross* did not consider §2000e-16 or the "made free from any discrimination" language and that *Babb* involved "very different statutory" wording, "markedly different" than the provisions applicable in *Gross*. 140 S.Ct. at 1175-76. Indeed, the Court had viewed 29 U.S.C. § 623(a)(1) as not being an inherently mixed-motive statute several years before *Gross. See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) ("Whatever the employer's decisionmaking process, a disparate treatment claim [under §

6

623(a)(1)] cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.") (emphasis added); *cf Babb,* 140 S.Ct. at 1173-74 ("Thus, under § 633a(a), a personnel action must be made 'untainted' by discrimination based on age, and the addition of the term 'any' ('free from any discrimination based on age') drives the point home. . . . If age discrimination plays any part in the way a decision is made, then the decision is not made in away that is untainted by such discrimination.") (emphasis added) and 1176 (finding the provision prohibited discrimination "in the 'mak[ing]' of a personnel decision, not just with respect to end results."). The Court, therefore, rejected the outcome-determinative "but-for" requirement in *Gross* as inapplicable to the wording of the federal-sector provision, because it concerned a statute "couched in very different terms." 140 S.Ct. at 1175-76 (quoting *Gomez-Perez v. Potter,* 553 U.S. 474 (2008)). The Court similarly found the reasoning of *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) to be inapplicable because the text at issue was "markedly different" than the language in § 2000e-3(a). 140 S.Ct. at 1175-76.[4] In *Babb,* the Court considered the <u>federal-sector statutory</u> language and cited to *Lesage* and *Mt. Healthy*.

The Court also relied upon *Mt. Healthy* in a Title VII case in which it found burden-shifting the appropriate but-for test in a mixed-motive case. *Price Waterhouse v. Hopkins,* 490 U.S., 228, 230, 241, 249 (1989) (distinguishing *McDonnell-Douglas,* adopting a burden-shifting approach in mixed-motive Title VII cases, relying in part on *Mt. Healthy* and other cases where the defendant had to rebut the illegitimate motive, and recognizing that "[a] court that finds for a plaintiff under

---

[4] It is significant to recognize that the Supreme Court directly rejected the applicability of *Nassar* - a Title VII non-burden shifting "but-for" retaliation decision that the Government relies upon- because the critical "made free from any discrimination" language was "markedly different" than the language in § 2000e-3(a).

7

th[e *Mt. Healthy*] standard has effectively concluded that an illegitimate motive was a "but-for" cause of the employment decision"). In *Comcast v. National Association of African American Owned Media,* 140 S.Ct. 1009, 1012 (2020), which dealt with other issues, the Supreme Court discussed *Price Waterhouse's* mixed-motive burden-shifting formula with approval, although noting that its effect was short lived because Congress amended the statute and added to the available prospective relief.

Fourth, the Government asserts that its argument is consistent with the Supreme Court's recognition in *Babb v. Wilkie* that Congress put a stricter burden on the Federal government. 140 S.Ct. at 1176-77. Dkt.104 p.8/18. It claims that if a plaintiff only establishes a but-for test for differential treatment he can get some relief. Dkt. 104 p.8/18. Of course, under the Government's preferred approach, Plaintiffs must disprove the Government's asserted reasons to obtain complete relief rather than the burden of persuasion shifting to the Government.  As the Government implicitly admits, that has significance because a defendant who considered illegitimate motives can prevail when the evidence is equipoise. If the Court wanted to use that test, it would have approved of the application of *Gross* and *Nassar* in order to obtain full damages instead of rejecting them completely.  It could have relied upon them instead of *Lesage* and *Mt. Healthy* when discussing the remedies, but it did not. Moreover, federal employers, <u>unlike all others</u>, would not have to meet burden-shifting requirements on <u>any</u> Title VII mixed-motive claims. Thus*,* federal-sector race, gender, sex, religion, national origin claims could never be motivating-factor claims, let alone *Babb v. Wilkie* claims, while private-sector employees have those rights. Plaintiffs' retaliation rights are inherent in the term "discrimination" under the same federal-sector Title VII language. *Gomez- Perez v. Potter,* 553 U.S. 474 (2008). Thus, all claims covered by the term

8

"discrimination" would receive the same treatment the Government wants to give retaliation claims. The Government's argument suggests that Congress was placing a "stricter standard" on the federal <u>employer</u> by shifting <u>all burdens back to the employee on all Title VII</u> claims. That argument is hardly consistent with *Babb v. Wilkie*.[5]

Fifth, the Government argues that logic supports its position. However, the Government's logic ignores the statutory language, *Babb v. Wilkie, Lesage, Mt. Healthy,* and the Supreme Court decisions listed in Appendix A. *Mt. Healthy* and *Lesage* apply "but-for" tests that illustrate the critical "free from any discrimination based upon . . ." language, while allowing a defendant to avoid all damages relief by establishing the same decision defense. [6]

    B.  *Monaghan v. Worldpay*

**1. A retaliatory HWE cannot be assessed pursuant to the "severe and pervasive" standard.**

The Government begins by claiming *Monaghan v. Worldpay US, Inc*., 955 F. 3d 855 (11th Cir. 2020) was confusing and does not clearly reject the use of the severe and pervasive standard. Notably, however, the <u>sole</u> claim before the Court of Appeals in *Gowski v. Peake,* 682 F.3d 1299, 1308 (11th Cir. 2012) was a retaliatory hostile work environment (HWE). *Monaghan* held at 682:

---

[5] As for "differential treatment" please read pages 1171-1174 of *Babb.* That is a situation where discrimination, which includes retaliation, played a part or was a consideration in the decision-making process.

[6] The Government also ignores the fact the federal Agency overseeing administrative litigation of federal-sector Title VII claims rejects the Government's logic. The Equal Employment Opportunity Commission (EEOC) is the executive agency which oversees EEO matters. They have addressed the separate standard for Federal employees in its EEOC Enforcement Guidance on Retaliation and Related Issues, No. 915.004 (Aug. 25, 2016) (available at www.EEOC.gov/laws/guidance/retaliation-guidance.cfm ). Chapter 9 (EEOC Mgmt. Dir.) 2015 WL 4884885927 Section VIII Paragraph B Subparagraph 1 (August 5, 2015). It recognizes the plaintiff must provide evidence sufficient to show the retaliation was a factor motivating management's conduct and it is then management's burden to overcome that by establishing that they would have made the dame decision in any event. *Complainant v. Dep't of Homeland Sec.,* EEOC DOC 0720140037, 2015 WL 3542586, at *4-5 (May 29, 2015) (retaliation under Title VII); *Complainant v. Dep't of Homeland Sec.,* EEOC DOC 0720140014, 2015 WL 5042782, at *5-6 (Aug. 19, 2015) (retaliation under Title VII or ADEA).

That left for decision whether the evidence was sufficient to support the verdict in the doctors' favor. We held it was. Curiously, however, we began the discussion of this issue by setting out not the *Burlington Northern* standard, and not our unrestricted adoption of that standard in *Crawford,* but the standard applied in older cases. We said that to return a verdict for the doctors, the jury had to find the mistreatment at issue was "sufficiently severe or pervasive to alter the terms and conditions of employment, thus constituting an adverse employment action." *Gowski,* 682 F.3d at 1312. This "terms and conditions" language came from the wrong statute--§2000e-2(a)(1) instead of § 2000e-3(a). And we said this even though we had just cited cases from other circuits recognizing retaliatory-hostile-environment claims—and cited those that applied the "severe or pervasive" standard as having been "abrogated on other grounds" by *Burlington Northern. See Gowski,* 682 F.3d at 1311 (citing three cases abrogated on other grounds by *Burlington Northern*, including, for example, *Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir. 2006) (adopting the "severe or pervasive" standard for a retaliatory-hostile-environment claims)).

We agreed with Ms. Monaghan, and with the EEOC as amicus curiae, that the articulation of the retaliation standard in *Gowski* is inconsistent with *Burlington Northern* and *Crawford.* Our adherence to the prior-panel rule is strict, but when there are conflicting prior panel decisions, the oldest one controls. *See, e.g., Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1072 (11th Cir. 2000). We now reaffirm that the standard applicable to all Title VII retaliation claims is the *Burlington Northern* "well might have dissuaded" standard, precisely as out pre-*Gowski* opinion in *Crawford* said.

Clearly, *Monaghan* rejects the severe and pervasive element of *Gowski*.

The Government ends this portion of its memorandum by conflating cases of harassment or HWE arising under 42 U.S.C. § 2000e-2, the Rehabilitation Act, and § 2000e-3. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) was a § 2000e-2 case. All other cases relied directly on *Harris* or cases which relied upon *Harris. Monaghan* recognized the language of § 2000e-2 and § 2000e-3 require a different result. *Id.* at p.861.[7]

### 2. *Monaghan* applies to a 42 U.S.C. § 2000e-16(a) HWE claim.

---

[7] The Government claims cases like *Jensen v. Potter,* 435 F.3d 444 (3d Cir. 2006) were not abrogated to the extent they adopted the severe and pervasive standard. Dkt.104 p.12/18. *Monaghan* disagrees as does the EEOC's 2019 brief in *Monaghan.* Brief for the EEOC as Amicus Curiae at 16, *Monaghan v. Worldpay US, Inc.,* C.A. No. 16-1927 (11th Cir. Dec. 29, 2017).

Contrary to arguments made in its MSJ, the Government now claims we should actually consider the wording of 42 U.S.C. § 2000e-16(a). We agree. *Monaghan* requires this court to apply *Burlington Northern.* Both cases contradict arguments made in the Government's MSJ and accepted by the court. The Government now turns to 42 U.S.C. § 2000e-16(a), but its resulting focus on "personnel actions" is fatal to its position.

It appears undisputed that Title VII's federal sector provision, § 2000e-16, applies to this case (at pg. 15) and that the term "personnel action" is found in both § 2000e-16 and the federal sector provision of the ADEA, 29 U.S.C. § 633a(a). Plaintiffs agree with the Government that the Supreme Court found the meaning of "personnel action" to be "easy to understand," principally by looking to the Civil Service Reform Act of 1978 (CSRA) and its explicit definition of the same term. *Babb*, 140 S. Ct. at 1172-73 (finding the definition/interpretation in 5 U.S.C. § 2302(a)(2)(A) of "personnel action" to be "consistent with the term's meaning in general usage"). The parties also appear to agree that the Supreme Court's interpretation of the same statutory language under the ADEA in *Babb* is applicable to this case under Title VII. (at pg. 15) ("Since Plaintiffs rely upon the impact of Babb to this case given the similarity of the statutory language between the ADEA, 29 U.S.C. § 633a(a), and Title VII, 42 U.S.C. § 2000e- 16(a), Plaintiffs must accept . . . the definition of that phrase adopted by *Babb*.")

As in *Babb v. Wilkie,* discussion of the applicable standard should be focused on the scope of the statutory language, i.e., the conduct prohibited by the statute, and the law addressing its meaning. However, without citation the Government ostensibly assumes a narrow interpretation of "personnel action" that is unsupported by case law or the broad language of the statute. This can be seen in the Government's declaration that "many of the component acts raised by plaintiffs . . . fall short of a 'personnel action'." (at pg. 16).  The Government makes no attempt to explain

11

<u>why</u> it believes the alleged acts fall outside the scope of "personnel actions" or <u>why</u> the alleged acts could not be considered as components of a broader personnel action. In fact, the Supreme Court in *Babb* found the plain meaning of "personnel action" to be broad enough to encompass "most employment-related decisions." *Babb*, 140 S. Ct. at 1173 (finding the term's meaning in general usage to be consistent with CSRA which "broadly defines a 'personnel action' to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews.") *Babb*, 140 S. Ct. at 1173 (citing 5 U.S.C. § 2302(a)(2)(A)).  The full text of § 2302 of the CSRA is set forth in Appendix B.

The CSRA defines "personnel action" to include, among several others listed, "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). Notably, the CSRA also created an independent, quasi-judicial federal agency charged with adjudicating federal employee complaints of prohibited personnel practices under 5 U.S.C. § 2302, the Merit Systems Protection Board (MSPB). See 5 U.S.C. § 1205. In the retaliation context, the MSPB has interpreted "personnel action" and its inclusion of "any other significant change in duties, responsibilities, or working conditions" broadly, finding it extends to "any harassment or discrimination <u>that could have a chilling effect</u> on whistleblowing or otherwise undermine the merit system." *Roach v. Dep't of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999) (quoting 140 Cong. Rec. H11, 421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey)) (emphasis added); *see also Savage v. Dep't of Army,* 122 M.S.P.R. 612, ¶ 23 (2015) (citing *Roach*). This standard, which broadly prohibits retaliatory actions "that could have a chilling effect on whistleblowing," is remarkably similar to the standard prohibiting retaliation that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination," as articulated by the Supreme Court in *Burlington Northern*, 548 U.S. at 68.  In fact, the inclusion of

"or otherwise undermine the merit system" suggests "personnel action" is even broader. It is difficult, if not impossible, to imagine any retaliatory acts that could meet the "well might have dissuaded" standard of *Burlington Northern* without also meeting the "chilling effect" standard applicable to "personnel actions" under the plain meaning of that term and 5 U.S.C. § 2302(a)(2)(A). Both phraseologies describe a way of determining materiality of the alleged acts. Indeed, the EEOC applies the *Burlington Northern* test under § 2000e-16. *Complainant v. Dep't of Homeland Sec.*, EEOC DOC 0720140037, 2015 WL 3542586, at *4-5 (May 29, 2015) ("Additionally, the Commission has a policy of considering reprisal claims with a broad view of coverage. See *Carroll v. Department of the Army*, EEOC Request No. 05970939 (April 4, 2000). For example, retaliatory actions which can be challenged are not restricted to those which affect a term or condition of employment. Rather, a complainant is protected from any discrimination that is reasonably likely to deter protected activity. See EEOC Compliance Manual Section 8, "Retaliation," No. 915.003 (May 20, 1998), at 8-15; *See also Carroll*.") As a result, *Monaghan* is applicable to this case.[8]

Relatedly, even though Title VII retaliation HWE claims include both discrete and non-discrete acts, *Gowski* 682 F.3d at 1313, The Government also contends (again without providing support)[9] that individual acts below the level of a personnel action cannot be considered when evaluating a HWE claim. (pp. 15, 16) This argument ignores that a HWE is itself a "personnel

---

[8] The Government does not dispute the Plaintiffs' assertion in their initial memorandum (Dkt.98 p.3/26) that the Eleventh Circuit announced at the oral argument in the appeal of *Tonkyro et al v. Sec'y Dep't of Veterans Affairs,* no 8:16-cv-2419-t-2018 WL 5830584 (M.D. Fla. Nov. 7, 2018) it would apply *Monaghan* to that federal-sector case. The Government had filed an opposition to the application of *Monaghan* (Ex. A) and the Appellants responded (Ex. B.).

[9] In declining to resolve the parameters of "personnel action," the Third Circuit noted that the Government has unsuccessfully advanced the argument that the term "personnel action" imposes a limitation on federal-sector retaliation claims when compared with the private sector on more than one occasion. *Komis v. Sec'y, of U.S. Dep't of Labor*, 918 F.3d 289, 296 n.6 (3rd Cir. 2019).

13

action" consisting of acts that need not rise to the level of a personnel action, under the definition. *See Savage*, 122 M.S.P.R. 612, ¶ 23 (2015) ("[T]he creation of a hostile work environment is itself a personnel action for purposes of the WPA.").The Government's assertion also conflicts with Federal Circuit case law interpreting "personnel action" under the CSRA. In *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 955 (Fed. Cir. 2020), the Federal Circuit held that while "retaliatory investigations in and of themselves do not qualify as personnel actions" within the meaning of the CSRA, "a retaliatory investigation, either on its own or as part of a broader set of circumstances, may qualify as a personnel action if it rises to the level of a 'significant change in ... working conditions'." Thus, "a retaliatory investigation could contribute toward the creation of a hostile work environment that is actionable as a significant change in working conditions." *Id*.

The EEOC views federal-sector employees as "protected from any action that would likely deter a reasonable person from engaging in protected activity" under § 2000e-16, notwithstanding its reference to "personnel actions." *See* EEOC Enforcement Guidance on Retaliation and Related Issues, No. 915.004, 2016 WL 4688886, at *17 n.108 (Aug. 25, 2016) (citing Fed. Sector Equal Emp't Opportunity, 77 Fed. Reg. 43,498, 43,501-43,502 (July 25, 2012)[10] (codified at 29 C.F.R. § 1614), htpps://federalregister.gov/a/2012-18134)). Thus, even for federal employees, a retaliatory HWE "can be challenged under the *Burlington Northern* standard even if it is not severe or pervasive enough to alter the terms and conditions of employment. If the conduct would be sufficiently material to deter protected activity in the given context, even if it were insufficiently severe or pervasive to create a hostile work environment, there would be actionable retaliation."

---

[10]While issuing its regulations on § 2000e-16, the EEOC also noted that it "believes it is vitally important that an employee be able to challenge as retaliatory a preliminary step to a personnel action or a proposed action that is reasonably likely to deter that employee from engaging in protected activity." 77 Fed. Reg. at 43,501.

*Id.*, at *20 ¶ II.B.3. Moreover, it should be clear at this point that "made free from any discrimination" extends the Government's liability beyond the personnel action itself. As discussed in *Babb*, " 'free from any discrimination' describes how the personnel action must be 'made,' namely, in a way that is not tainted by differential treatment. If . . . discrimination plays any part in the way a decision is made, then the decision is not made in a way that is untainted by such discrimination." 140 S.Ct. at 1173-74. The critical statutory language, therefore, "*does expressly impose liability if . . . discrimination plays a part in a federal employment decision.*" *Id.* at 1175. There is no statutory language support for the proposition that discriminatory acts which play a part in the bigger-picture HWE personnel action must also reach some standard individually in order to be considered. They are part of the circumstances which must be considered under *Burlington Northern.*

### 3. Other Issues

In Fn 6 (pg. 17), the Government states:

> 6 *In Llampallas v. Mini–Circuits, Lab, Inc*., 163 F.3d 1236, 1243 (11th Cir.1998), the Circuit noted that, by enacting § 2000e–16, Congress intended to make Title VII applicable in the federal workplace to the same extent that it was already applicable in the non-federal workplace"); also *Rives v. Lahood*, 605 Fed. Appx. 815, 818 (11th Cir. 2015). If Babb is found to extend to all federal sector claims under § 2000e-16, then the interpretation offered by Llampallas no longer applies. That would mean, for instance, that the motivating factor and same decision defense codified at 42 U.S.C. § 2000e-2(m) and § 2000e-5(g)(2)(B) have no application in federal sector cases.

It is unclear what the Government's position is given the fact it has never agreed § 2000e-2(m) applies to federal employees. As for *Babb,* see the above discussion.

To assist the court's analysis, Appendix B contains the key portions of the various statutes discussed herein.  For 5 U.S.C. § 2302(a)(2)(A) we also note the provisions under which discrete acts of retaliation can fall although all circumstances should be considered.

15

Respectfully submitted,

***/s/ Joseph D. Magri***
Joseph D. Magri
Sean M. McFadden
Merkle & Magri, P.A.
5601 Mariner Street, Suite 400
Tampa, Florida 33609
Telephone: (813) 281-9000
Facsimile: (813) 281-2223
Email: jmagri@merklemagri.com
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to the following CM/ECF participants:

Scott H. Park
Assistant United States Attorney
Julie R. Posteraro
Assistant United States Attorney
400 West Washington Street, Suite 3100
Orlando, FL 32801
Email: Scott.Park@USDOJ.gov
Email: Julie.Posteraro@usdoj.gov

/s/  Joseph D. Magri
Joseph D. Magri