**ROSA SLY and**
**DEVONA HOLLINGSWORTH,**

      **Plaintiffs,**

**v.**                                  **Case No. 8:17-cv-1868-T-AAS**

**SECRETARY, DEPARTMENT OF**
**VETERANS AFFAIRS,**

      **Defendant.**

_____/

## ORDER

The Secretary of the Department of Veterans Affairs (Secretary) moves for summary judgment on Rosa Sly's and Devona Hollingworth's claims of retaliation, harassment and hostile work environment, and race discrimination. (Doc. 65). The plaintiffs oppose the Secretary's motion. (Doc. 71).

## I.    LEGAL STANDARD

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 2p42, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). The nonmoving party must "go beyond the pleadings and her own affidavits," and she

must point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Id.*

If evidence requires credibility determinations or deciding factual inferences in the moving party's favor, summary judgment is inappropriate because the duty to weigh credibility and evidence belongs to the jury when the judge is not the factfinder. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (quotation and citation omitted). Further, all record evidence is reviewed with inferences construed in the nonmoving party's favor. *Id.* at 1192–93 (citation omitted).

## II. BACKGROUND

### A. Procedural History

In the initial complaint, Ms. Sly sued the Secretary for retaliation, harassment and hostile work environment, and race discrimination under Title VII. (Doc. 1). The Secretary answered and asserted affirmative defenses. (Doc. 15). Ms. Sly successfully sought leave to file an amended complaint to add Ms. Hollingsworth as a plaintiff. (Docs. 22, 25). In the first amended complaint, Ms. Hollingsworth sued the Secretary for the same claims as Ms. Sly. (Doc. 26). Again, the Secretary answered and asserted affirmative defenses. (Doc. 29).

Because of information in discovery, Ms. Sly and Ms. Hollingsworth successfully sought leave to file a second amended complaint, which the Secretary answered and asserted affirmative defenses. (Docs. 50, 51, 52, 53). The Secretary moves for summary judgment on every claim that Ms. Sly and Ms. Hollingsworth

alleged. (Doc. 65). Ms. Sly and Ms. Hollingsworth oppose the motion. (Doc. 71). The Secretary successfully sought to reply. (Doc. 73, 74, 75). Ms. Sly and Ms. Hollingsworth successfully sought to file a sur-reply. (Docs. 76, 77, 78).

Ms. Sly and Ms. Hollingsworth successfully sought leave to file a third amended complaint.[1] (Doc. 79, 80, 82, 83). Because Ms. Sly added a new fact related to her claims, the court allowed the Secretary to file a supplemental brief to address this new fact and allowed Ms. Sly to respond to the Secretary's supplemental brief. (Doc. 82). Both parties provided supplemental briefs. (Docs. 85, 86).

## B.    Statement of Facts[2]

Since 1980, Ms. Sly, who is African American, has worked at the Bay Pines VA Medical Center. (Doc. 65, Ex. A, 6:24–7:1; Doc. 83, ¶ 3). Since 2004, Ms. Sly has been the supervisor of the Release of Information (ROI)[3] section in the Business Office Service (BOS) at Bay Pines. (Doc. 65, ¶ 1; Doc. 65, Ex. A, 9:7–8). After settling a prior Equal Employment Opportunity (EEO) complaint, Ms. Sly was promoted from a GS-9 to a GS-11 and made the alternate chief of the Records Management Section.

---

[1] Again, the Secretary answered and asserted affirmative defenses. (Doc. 84).

[2] When ruling on a motion for summary judgment, reasonable inferences are drawn in the nonmoving party's favor and evidence favorable to the moving party that the jury need not believe is disregarded. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004) (discussing judgment as a matter of law); *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986) (stating the standard for summary judgment mirrors the standard for directed verdict). As a result, this order's "Background" includes reasonable inferences in Ms. Sly's and Ms. Hollingsworth's favor and disregards evidence favorable to the Secretary that a jury need not believe.

[3] The ROI section handles requests by veterans and others, such as lawyers or government agencies, for the release of medical records. (Doc. 65, ¶ 1).

(Doc. 65, Ex. A, 12:20–16:21).

Ms. Hollingsworth also is African American. (Doc. 83, ¶ 95). She is a Master Sergeant in the United States Air Forces Reserves. (*Id.* at ¶ 3). Ms. Hollingsworth worked as the Assistant Chief of Health Information Management System[4] (HIMS) from October 3, 2016 to July 24, 2017. (Doc. 65, Ex. A, 31:23–32:1; Doc. 65, Ex. A-16, pp. 316–17; *see also* Doc. 65, ¶ 3).

Ms. Wendy Shaw-Hillman, who is Caucasian (Doc. 65, Ex. M, ¶ 9), was the supervisor for the ROI in the Lee County Outpatient Clinic for Bay Pines (Doc. 65, Ex. E, 5:1–7). Ms. Shaw-Hillman supervised medical records, ROI, and coding. (Doc. 65, Ex. E, 5:6–7). Since February 2018, she is the Privacy Act Officer for Lee County. (Doc. 65, Ex. E, 4:14–21).

Ms. Donna Griffin-Hall, who is African American (Doc. 65, Ex. C, 33:18–20), started at Bay Pines as the Chief of Health Administrative Service in 2007 (Doc. 65, Ex. C, 4:15–16). After settling a prior EEO complaint, Ms. Griffin-Hall received the position of Chief of BOS at Bay Pines. (Doc. 65, Ex. C, 18:8–9:10). Ms. Griffin-Hall was the service chief of Ms. Sly, Ms. Hollingsworth, and Ms. Shaw-Hillman. (Doc. 83, ¶ 5).

Ms. Kristine Brown, who goes by Kris Brown, was the Associate Director of Bay Pines from December 2009 to October 2017. (Doc. 65, Ex. D, 5:21–6:9). Since October 2017, Ms. Brown has been the Deputy Director of Bay Pines. (Doc. 65, Ex.

---

[4] HIMS is a section in the BOS and includes ROI, coding, and medical records and scanning. (Doc. 65, ¶ 3).

D, 6:9–11; *see also* Doc. 65, ¶7).  She is the direct supervisor of Ms. Griffin-Hall.  (Doc. 65, Ex. D, 7:16–22).

Although Ms. Griffin-Hall is at the center of the claims, Ms. Sly and Ms. Hollingsworth identify separate and distinct events as the basis for their claims. Thus, the court will review the facts for each separately.

### 1.    Ms. Sly

To better understand the facts related to the specific events and claims presented by Ms. Sly, a discussion follows about the general background information related to ROI backlog and missing requests, Ms. Sly's EEO complaints, and the discrete acts Ms. Sly allege form the basis of her claims.

### a.    Background on ROI Backlog and Missing Requests

When Ms. Griffin-Hall became Chief of BOS in June 2014, ROI had a backlog in processing requests.[5]  (Doc. 65; Ex. M, ¶ 5; *see also* Doc. 65, Ex. L-1).  Although there is no data before October 2014, a supervisory email string reported the ROI had a backlog of 580 requests in August 2014.  (Doc. 71, Ex. 25, p. 12, n.57).  From the VA Office of the Inspector General report, the average number of requests pending over twenty days between October 2014 and May 2016 was 2,454.[6]  (Doc. 71, Ex. 25, p. 12).

The Privacy Office[7] audited ROI from October to December 2014 and

---

[5] Request for release of information are to be processed within twenty days, and requests pending longer are in backlog.  (Doc. 65, Ex. G, 52:11–19).

[6] This number was the average, but the report shows the backlog increased to 3,423 requests pending longer than twenty days in April 2016.  (Doc. 71, Ex. 25, p. 12).

[7] The Privacy Office conducts quarterly audits at Bay Pines and outpatient clinics to

discovered requests, which contain personal information, were missing and posed a privacy breach.  (Doc. 65, Ex. I, ¶ 3).  The Privacy Office sent a memo detailing the findings of the audit, which included forty-seven missing requests.  (Doc. 65, Ex. I-2).  On March 27, 2015, the Privacy Office issued a formal privacy violation memo identifying twelve requests remained missing.  (Doc. 65. Ex. I-3, p. 1605).

Over the next several months, BOS continued to have a problem with missing requests, and the Privacy Office issued four formal privacy violation memos between April 29, 2015 to May 22, 2015.  (Doc. 65, Ex. I-3, pp. 1598–1604).  These memos reflect 143 missing requests.  (Doc. 65, Ex. I-3, pp. 1598–1604).  On May 22, 2015, Ms. Griffin-Hall prepared an internal memo and set up meetings every other week with Ms. Sly to address how to improve ROI, including developing action plans and Standard Operating Procedures.  (Doc. 65, Ex. J, ¶ 15; *see also* Doc. 65, Ex. J-9).

The problem with the missing requests in ROI continued throughout 2015 and into 2016, with the Privacy Office issuing four more formal privacy violation memos identifying 107 additional missing requests.  (Doc. 65, Ex. I-3, pp. 1589–97).  On June 21, 2016, BOS notified the Privacy Office there were potentially 386 missing requests received between January 2014 to March 2016.  (Doc. 65, Ex. I-3, pp. 1606–08).

After processing, incoming requests were locked in a secured room in the ROI area at Bay Pines.  (Doc. 65, Ex. A, 158:17–19).  Because of the missing requests, Ms. Griffin-Hall required Ms. Sly and Ms. Loria Royer, the lead in ROI, to turn in their

---

ensure privacy compliance related to protected health information.  (Doc. 65, Ex. I, ¶ 3).

keys to the secured room. (Doc. 65, Ex. A, 159:2–15; Doc. 65, Ex. G, 26:21–27:12). This left only Ms. Griffin-Hall and Ms. Patricia Bowman[8] with access to the room. (Doc. 65, Ex. J, ¶ 18; *see also* Doc. 65, Ex. A, 164:15–16). Additionally, in June and July 2016, Ms. Shaw-Hillman came to Bay Pines to assist in the search for the missing requests. (Doc. 65, Ex. E, 31:21–32:5). Ultimately, some missing requests were located in employees' desks and the secured room, but Ms. Shaw-Hillman also determined 400 other requests were never logged. (Doc. 65, Ex. E, 117:8–15; Doc. 65, Ex. Q, 43:14–18). Ms. Shaw-Hillman also provided a detailed report of her observations and recommended changes for the Bay Pines ROI to help fix the backlog and missing requests issues. (Doc. 65, Ex. E, Pl. Ex. 1).

On July 14, 2016, the Privacy Office determined BOS was in serious noncompliance with protecting VA sensitive information, and the Chief of BOS, Ms. Griffin-Hall, determined Ms. Sly was responsible for those events. (Doc. 65, Ex. I-3, p. 1607). The Privacy Office deferred to BOS to address these issues and gave BOS until July 21, 2016 to submit a corrective action plan. (Doc. 65, Ex. I-3, p. 1607). Because of the backlog and missing requests, the VA Office of Inspector General investigated the ROI program at Bay Pines. (Doc. 65, Ex. S, Tab 28). The report confirmed ROI could not find 547 hard copy requests submitted from January 2014 through June 2016. (Doc. 71, Ex. 25, p. 22).

---

[8] Ms. Bowman was the Chief of HIMS between October 2015 and January 2017. (Doc. 83, ¶ 5). She was the immediate supervisor of Ms. Sly and Ms. Hollingsworth, and Ms. Griffin-Hall was Ms. Bowman's supervisor. (*Id.*).

### b.    EEO Activity[9]

Around 2008, Ms. Sly filed an EEO Complaint against Mr. Jason Waldrop, former Chief of BOS, alleging race discrimination because she did not receive a promotion to privacy officer. (Doc. 65, Ex. A, 12:20–15:9). The EEO complaint settled, and Ms. Sly was promoted to a GS-11 and made the alternate records manager. (Doc. 65, Ex. A, 15:23–16:6). In July 2015, Ms. Sly provided an affidavit for Ms. Mary Mells's litigation against the VA. (Doc. 65, Ex. A, 27:12; *see also* Doc. 65, Ex. A-5).

On June 24, 2015, Ms. Sly filed an EEO complaint against Ms. Griffin-Hall for retaliation in response to Ms. Sly's affidavit in Ms. Mells's litigation. (Doc. 65, Ex. A-1). On August 15, 2016, Ms. Sly filed an EEO complaint against Ms. Griffin-Hall alleging retaliation and race discrimination including various actions such as a performance improvement plan and July 2016 privacy violation memo. (Doc. 65, Exs. A-2, A-3). On June 2, 2017, Ms. Sly filed an EEO complaint against Ms. Griffin-Hall for retaliation based on hostile work environment. (Doc. 65, Ex. A-28). On January 3, 2019, she filed an EEO complaint alleging race discrimination and retaliation related to an October 2018 reprimand and Notice of Proposed Suspension. (Doc. 65, Ex. A-29).

### c.    Discrete Acts Alleged in the Third Amended Complaint

As part of the settlement of Ms. Sly's 2008 EEO complaint, she was made the

---

[9] Because some of Ms. Sly's alleged discrete acts occur before her first EEO complaint against Ms. Griffin-Hall, this section includes all of Ms. Sly's EEO complaints or activity beginning when she received a pay grade increase.

alternate records manager. (Doc. 65, Ex. A, 16:5–23). After John Accetta, the primary records manager, retired in 2014, Ms. Sly devoted substantial time to supplemental duties but received no training despite asking Ms. Brown and Ms. Griffin-Hall for training. (Doc. 83, ¶ 46).

In April 2015, Ms. Griffin-Hall orally removed Ms. Sly's supervisory duties and required her to perform staff level duties of processing 25-50 medical records weekly. (*Id.* at ¶ 49). On May 14, 2015, Ms. Griffin-Hall sent Ms. Sly an email stating Ms. Sly was to "assist with closing out requests on a daily basis and provide an attachment of Ms. Sly's current productivity." (*Id.*; *see also* Doc. 65, Ex. 8, p. 99). Ms. Griffin-Hall instructed the staff to take messages on incoming calls, which interfered with Ms. Sly's supervisory duties to handle those calls. (Doc. 83, ¶ 49).

On November 13, 2015, Ms. Sly alleges she received her FY-2015 performance appraisal with an overall rating of "fully successful." (*Id.* at ¶ 55; *see also* Doc. 65, Ex. A-30). Ms. Sly received no counseling about her performance at the mid-year progress review in June 2015. (Doc. 83, ¶ 55; *see also* Doc. 65, Ex. A-30). Ms. Sly previously received an "outstanding" rating, and a "fully successful" rating affected Ms. Sly's ability to receive a performance bonus. (Doc. 65, Ex. A, 281:11–282:12; Doc. 65, Ex. S, Tab 2 (including 2013-2014 performance review with an "outstanding" rating)).

On June 27, 2016, Ms. Griffin-Hall limited Ms. Sly's access to the storage room for ROI requests unless Ms. Griffin-Hall or Ms. Bowman approved Ms. Sly's access. (Doc. 83, ¶ 63; Doc. 65, Ex. A, 158:6–164:9; *see also* Doc. 65, Ex. J-19).

On June 29, 2016, Ms. Bowman at the direction of Ms. Griffin-Hall issued Ms. Sly a Performance Improvement Plan (PIP). (Doc. 83, ¶ 64; *see also* Doc. 65, Ex. A-20). The PIP stated Ms. Sly's performance of her duties in the critical elements of leading change, leading people, business acumen, and results drive is unacceptable. (Doc. 65, Ex. A-20). Ms. Sly had 90 days to show acceptable performance, and if she did not meet the requirements, Ms. Sly could be demoted or removed from federal service. (Doc. 65, Ex. A-20). On September 30, 2016, Ms. Sly successfully completed the PIP. (Doc. 65, Ex. A-22).

On July 14, 2016, the Privacy Office issued a privacy violation memo identifying several missing requests and found Ms. Sly in violation for those missing requests. (Doc. 83, ¶ 67). The Privacy Office does not take disciplinary action against employees for the privacy violation; rather any disciplinary action is left to the discretion of the service involved in the privacy breach. (Doc. 65, Ex. I, ¶ 9). Ms. Sly alleges Ms. Griffin-Hall unfairly criticized Ms. Sly for procedures Ms. Griffin-Hall instituted over Ms. Sly's objections. (Doc. 83, ¶ 66). Because Ms. Griffin-Hall provided work directly to the employees, Ms. Sly could not keep track of those requests, hindering her ability to supervise employees. (*Id.*).

On November 25, 2016, Ms. Griffin-Hall drafted a memo stating the ROI would be aligned and report to the Lee County Healthcare Center Manager—Ms. Shaw-Hillman. (Doc. 83, ¶ 68; *see also* Doc. 65, Ex. B-4). The change would become effective on November 28, 2016. (Doc. 65, Ex. B-4). Ms. Sly was on personal leave when Ms. Griffin-Hall drafted the memo. (Doc. 65, Ex. B, 78:8). When Ms. Sly returned and

heard about the realignment, Ms. Sly did not discuss the realignment with anyone. (Doc. 65, Ex. A, 197:13–198:1). This realignment never occurred because of potential issues related to the pay classifications of Ms. Sly and Ms. Shaw-Hillman. (Doc. 65, Ex. B-7; *see also* Doc. 65, Ex. A, 196:21–197:12).

From April 17, 2017 to May 25, 2017, Ms. Griffin-Hall sent emails saying Ms. Sly could not lead her department, saying Ms. Sly needed to be a mentor to her staff, and reassigning Ms. Sly from her supervisory duties instead to process requests at the front desk. (Doc. 83, ¶ 74a; *see also* Doc. 65, Ex. A-28). On April 24, 2017, Ms. Griffin-Hall directed Ms. Sly to allow students to use Ms. Sly's employee badge to scan documents. (Doc. 83, ¶ 74b; *see also* Doc. 65, Ex. A, 245:1–6 (stating no student used her badge)). On May 31, 2017, Ms. Griffin-Hall directed Ms. Sly to audit her entire staff, even though this was typically a responsibility of the lead technologists. (Doc. 83, ¶ 74d; *see also* Doc. 65, Ex. A, 106:4–11). On the same day, Ms. Griffin-Hall directed Ms. Sly to work the front desk processing Freedom of Information Act requests in addition to her supervisory duties. (Doc. 83, ¶74e; *see also* Doc. 71, Ex. E-4, ¶ e). On August 31, 3017, Ms. Griffin-Hall provided a mid-term evaluation— which should have been done in March—that Ms. Sly's "performance needed improvement to be fully satisfactory." (Doc. 83, ¶ 74f).

One year later, in September 2018, Ms. Griffin-Hall met with Ms. Sly to discuss the deficiency in the validation worksheets Ms. Griffin-Hall received from Ms. Sly. (Doc. 65, Ex. J, ¶ 19; Doc. 65, Ex. J-14). According to Ms. Griffin-Hall, Ms. Sly failed to follow instructions by not documenting that she followed the validation process

under the Standard Operating Procedure Ms. Sly signed on January 10, 2018. (Doc. 65, Ex. A-37). As a result, on October 16, 2018, Ms. Griffin-Hall issued Ms. Sly a Letter of Reprimand. (Doc. 65, Ex. A-31). Ms. Sly filed a grievance challenging the October 2018 reprimand but ultimately withdrew it (Doc. 65, Ex. K, ¶ 4), and Ms. Griffin-Hall imposed the reprimand in January 2019 (Doc. 83, ¶ 76a).

On January 7, 2019, Ms. Griffin-Hall issued a Notice of Proposed Seven-Day Suspension. (Doc. 83, ¶ 76b; *see also* Doc. 65, Ex. A, 283:18–21; Doc. 65, Ex. J-15). The proposed suspension was based on two charges: (1) failure to provide supervisory oversight related to the backlog of ROI requests; and (2) failure to safeguard confidential information based on the unaccounted missing ROI requests. (Doc. 65, Ex. A-35). The proposed suspension would suspend Ms. Sly from duty and pay for seven calendar days and gave Ms. Sly a right of reply to Ms. Brown, who would make the final decision. (Doc. 65, Ex. A-35). Ms. Sly provided a written rebuttal (Doc. 65, Ex. A, 283:24–284:6) and an oral response (Doc. 85, Ms. Brown Supplemental Declaration, ¶ 8).

Based on the information in the evidence file and Ms. Sly's responses, Ms. Brown lowered the proposed suspension to a reprimand.[10] (Doc. 85, Ms. Brown Supplemental Declaration, ¶ 8). Ms. Brown found the evidence did not support the charge of failure to provide supervisory oversight. (Doc. 85, Ms. Brown Supplemental Declaration, ¶ 8). But Ms. Brown found the evidence supported the charge of failure

---

[10] Ms. Griffin-Hall also received a reprimand based on the same VA Office of Inspector General report. (Doc. 85, Ms. Brown Supplemental Declaration, ¶ 9).

to safeguard confidential information based on the VA Office of Inspector General report. (Doc. 85, Ms. Brown Supplemental Declaration, ¶ 9).

## 2. Ms. Hollingsworth

Ms. Bowman hired Ms. Hollingsworth as the Assistant Chief of HIMS, starting October 3, 2016 subject to a one-year probationary period. (Doc. 65, Ex. B-16, p. 316).

On November 17, 2016, approximately six weeks after Ms. Hollingsworth started, Ms. Griffin-Hall sent a memo to Ms. Hollingsworth expressing concerns about Ms. Hollingsworth's communication based on feedback received from the BOS staff. (Doc. 65, Ex. B-3, ¶ 1). Ms. Griffin-Hall expected Ms. Hollingsworth to communicate in a respectful manner, comply with guidance as given, and understand and apply the processes and procedures within the VA. (Doc. 65, Ex. B-3, ¶ 3). Before issuing the memo, Ms. Griffin-Hall contacted Taren Savage, Human Resources Specialist at Bay Pines, about Ms. Hollingsworth's conduct. (Doc. 65, Ex. O, 77:25–78:6). Ms. Savage advised Ms. Griffin-Hall to terminate Ms. Hollingsworth, but Ms. Griffin-Hall wanted to give Ms. Hollingsworth a chance and issued the memo. (Doc. 65, Ex. O, 78:24–80:1).

In November 2016, Ms. Griffin-Hall proposed to realign the ROI at Bay Pines under Lee County, and Ms. Hollingsworth opposed the change, expressed her concerns about distributing the memo, and ultimately did not distribute the memo. (Doc. 65, Ex. B-7). On November 30, 2016, Ms. Hollingsworth emailed the union about a veteran's need for alternative work schedule, but Ms. Hollingsworth used the wrong form. (Doc. 65, Ex. N, 220:13–221:9). Ms. Griffin-Hall requested Ms.

Hollingsworth resend the email, but Ms. Hollingsworth refused because the union accepted the wrong form. (Doc. 65, Ex. N, 221:10–18). Ms. Hollingsworth's November 30th email also included medical information about the employee in violation of Bay Pines procedures. (Doc. 65, Ex. B-16, p. 323).

In late November 2016, Ms. Hollingsworth made a telephone complaint to the VA Anti-Harassment Office against Ms. Griffin-Hall and the harassing environment Ms. Hollingsworth endured. (Doc. 65, Ex. B-2). Afterwards, Ms. Brown conducted an inquiry about the allegations with both parties. (Doc. 65, Ex. B-2). Ms. Hollingsworth complained about Ms. Griffin-Hall's behavior toward her, including Ms. Griffin-Hall calling Ms. Hollingsworth the baby of the group. (Doc. 65, Ex. B-2). On December 21, 2016, Ms. Brown recommended the parties address each of their individual grievances face to face in the mediation process. (Doc. 65, Ex. B-2).

On December 13, 2016, Ms. Griffin-Hall met with Ms. Sly, Ms. Hollingsworth, Ms. Shaw-Hillman, and Marilyn Jackson, a lead from medical records. (Doc. 65, Ex. B-13). In that call, a heated exchange occurred between Ms. Hollingsworth and Ms. Griffin-Hall. (Doc. 65, Ex. O, 34:9–35:8; Doc. 65, Ex. N, 229:5–234:9). Ms. Hollingsworth felt Ms. Griffin-Hall was being disrespectful and unprofessional. (Doc. 65, Ex. B-16, p. 352). After the meeting, Ms. Griffin-Hall informed Ms. Hollingsworth that she thought Ms. Hollingsworth was being disrespectful, and her behavior was inappropriate. (Doc. 65, Ex. N, 233:9–23).

The Secretary asserts on December 20, 2016, Ms. Griffin-Hall submitted a memorandum to Human Resources requesting to terminate Ms. Hollingsworth

during her probationary period because Ms. Hollingsworth failed to follow instructions, released medical information without authorization, and otherwise had "conduct unbecoming." (Doc. 65, Ex. B-16, p. 320).

On December 22, 2016, Ms. Hollingsworth contacted an EEO counselor and made an informal complaint of race and age discrimination but did not make a formal complaint on those grounds. (Doc. 65, Ex. B-1).

Ms. Hollingsworth handled the duties of the Acting Chief of HIMS from November 21, 2016 to January 27, 2017 during Ms. Bowman's extended leave. (Doc. 71, Ex. HH). Ms. Hollingsworth continued to handle the duties of the Chief of HIMS because Ms. Bowman left the VA and there was a federal hiring freeze. (Doc. 65, Ex. B-9). On January 25, 2017, while Ms. Griffin-Hall was serving in a detailed position in San Diego, Ms. Hollingsworth contacted the Chief of Health Informatics and the Administrative Officer about being temporarily promoted because she was handling the duties of the Chief of HIMS, essentially filling the role as Acting Chief of HIMS. (Doc. 83, ¶ 71b; *see also* Doc. 65, Ex. B-9, p. 533). Ms. Hollingsworth's inquiry was discussed with Ms. Griffin-Hall who stated the promotion did not apply to Ms. Hollingsworth's situation because Ms. Hollingsworth was not performing the duties of Chief of HIMS. (Doc. 65, Ex. B-9, p. 529). Ms. Griffin-Hall designated no one as the Acting Chief of HIMS, and Ms. Griffin-Hall wished to discuss Ms. Hollingsworth's request more when she returned to Bay Pines. (Doc. 65, Ex. B-9, p. 529).

On February 1, 2017, Ms. Hollingsworth contacted an EEO counselor to begin the formal EEO complaint process, and on April 13, 2017, she filed a formal EEO

complaint against Ms. Griffin-Hall for retaliation. (Doc. 65, Ex. B-5). On August 23, 2017, Ms. Hollingsworth amended her EEO complaint to include her termination. (Doc. 65, ¶45).

Ms. Hollingsworth was on military leave from February 26, 2017 through March 4, 2017 and then went on vacation until March 12, 2017. (Doc. 65, Ex. B, 110:25–111:9). While Ms. Hollingsworth was on military leave, Ms. Griffin-Hall emailed the entire BOS requesting volunteers to serve as the Acting Chief of HIMS, which would include a temporary promotion for thirty-days. (Doc. 83, ¶ 71d; *see also* Doc. 65, Ex. B-10). Ms. Hollingsworth started another military leave on March 13, 2017 and did not return to Bay Pines. (Doc. 65, Ex. B, 112:14–16).

On July 18, 2017, the Chief of Human Resources Service at Bay Pines signed a letter terminating Ms. Hollingsworth during her probation period, effective July 24, 2017. (Doc. 83, ¶ 71f; *see also* Doc. 65, Ex. B-16, pp. 316–18). On July 31, 2017, the VA notified Ms. Hollingsworth that she received VA pay for time when she was on military leave and needed to repay the VA.[11] (Doc. 83, ¶ 71e; *see also* Doc. 65, Ex. B, 122:22–123:16).

## III. ANALYSIS

The Secretary argues Ms. Hollingsworth did not exhaust her claims of racial discrimination and racial harassment. (Doc. 65, pp. 29–30). The Secretary argues Ms. Sly cannot establish a prima facie case of retaliation because none of Ms. Sly's

---

[11] The VA deducted the amount owed from Ms. Hollingsworth's payout of her annual leave she accrued while at Bay Pines. (Doc. 65, Ex. B, 124:4–7).

discrete acts are material adverse actions. (*Id.* at pp. 14–15, 21–23). The Secretary asserts even if Ms. Sly can establish a prima facie case of retaliation, then Ms. Sly cannot show the Secretary's legitimate reasons were pretextual. (*Id.* at pp. 15–21, 23). The Secretary argues Ms. Hollingsworth cannot establish a prima facie case of retaliation because Ms. Hollingsworth did not engage in statutorily protected activity or her discrete acts were not material adverse actions. (*Id.* at pp. 24–25, 27–29). The Secretary asserts even if Ms. Hollingsworth can establish a prima facie case of retaliation, then Ms. Hollingsworth cannot show the Secretary's legitimate reasons were pretextual. (*Id.* at pp. 25–27). The Secretary argues neither Ms. Sly nor Ms. Hollingsworth can establish a hostile work environment claim. (*Id.* at pp. 34–41). While the Secretary does not contest Ms. Sly can show a prima facie case of race discrimination, the Secretary argues Ms. Sly cannot show the Secretary's legitimate reasons are pretextual. (*Id.* at pp. 31–33).

## A.    Exhausting Administrative Remedies

Before bringing a Title VII for employment discrimination, a federal employee must exhaust administrative remedies. *Brown v. Snow*, 440 F.3d 1259, 1262 (11th Cir. 2006). The exhaustion requirements provide "the agency the information it needs to investigate and resolve the dispute between the employee and employer." *Wade v. Sec'y of the Army*, 796 F.2d 1369, 1377 (11th Cir. 1986).

Typically, the claims alleged in the complaint must have been the claims alleged in an EEOC charge. *Alexander v. Sonny's Real Pit Bar-B-Q*, No.:3:16–cv–117–J–20JRK, 2016 WL 9488722, at *5 (M.D. Fla. July 20, 2016). But the Eleventh

Circuit considers two factors when addressing whether claims not alleged in an EEOC charge are "within the scope of that charge to allow the discrimination claims in a judicial complaint." *Id.* "The first criteria is whether the subsequent acts are 'like or reasonably related to' the allegations contained in the EEOC charge." *Browning v. AT&T Paradyne Corp.*, 838 F. Supp. 1568, 1572 (M.D. Fla 1993) (citing *Turner v. Orr*, 804 F.2d 1223, 1226 (11th Cir. 1986)). "The second criteria is whether the subsequent acts 'could reasonably be expected to grow out of' the investigation out of the pending EEOC charges." *Browning*, 838 F. Supp. at 1572 (citing *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988)).

The Secretary does not contest Ms. Sly exhausted her administrative remedies. But the Secretary argues Ms. Hollingsworth did not exhaust her administrative remedies for her claim of race discrimination.[12] (Doc. 65, pp. 29–30). The Secretary argues Ms. Hollingsworth never raised race discrimination in a formal EEO complaint. (*Id.* at p. 29). Ms. Hollingsworth argues her race discrimination claim is like or related to her formal EEO complaint. (Doc. 71, p. 39). The Secretary argues a race discrimination claim is not like or related to a claim of retaliation nor would it be expected to grow out of the charge made in the formal EEO complaint. (Doc. 65,

---

[12] The Secretary also argues Ms. Hollingsworth did not exhaust her remedies for her harassment claim. (Doc. 65, p. 29). Upon review of the complaint, Ms. Hollingsworth alleges generally the harassment and hostile work environment is based on reprisal and race. (Doc. 83, ¶ 89). But the complaint gives no examples about race even though Ms. Hollingsworth provides allegations of a hostile work environment based on reprisal. (Doc. 83, ¶ 92). Also, in the responses to the Secretary's motion for summary judgment, Ms. Hollingsworth does not provide facts or argument for racial harassment or hostile work environment based on race.

p. 30).

On December 22, 2016, Ms. Hollingsworth contacted an EEO counselor alleging race and age discrimination, but she never filed a formal complaint and the EEO closed her inquiry on March 6, 2017 as a withdrawal. (Doc. 65, Ex. B-1; *see also* Doc. 65, Ex. B-6). Instead, Ms. Hollingsworth made a separate EEO contact in January 2017 and filed a formal EEO complaint in April 2017 alleging retaliation. (Doc. 65, Ex. B-6). In Ms. Hollingsworth's formal complaint, she states her basis is "reprisal/retaliation" and believes the retaliation is because of Ms. Hollingsworth's prior complaints against Ms. Griffin-Hall, including the December 2016 contact. (Doc. 65, Ex. B-5). The investigative report specifically addresses Ms. Hollingsworth's claim as "hostile work environment based on reprisal (prior EEO activity)." (Doc. 65, Ex. B-6).

Ms. Hollingsworth did not allege race discrimination in her formal EEO complaint, so the question is whether race discrimination is reasonably related to or expected to grow from a retaliation claim. Under the facts, even construed in favor of Ms. Hollingsworth, the answer is no. Ms. Hollingsworth's EEOC complaints focus on the alleged hostile work environment she suffered following her EEO complaints against Ms. Griffin-Hall. Ms. Hollingsworth's race discrimination claim does not appear reasonably related to her retaliation claim. Nor does it appear that Ms. Hollingsworth's race claim could be reasonably expected to grow from the EEO's investigation of her retaliation claim. *See Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 926 (11th Cir. 2014) (finding sex discrimination claim was not expected to

flow from a retaliation claim). Because Ms. Hollingsworth did not exhaust her administrative remedies for her race discrimination claim, the Secretary's motion for summary judgment on Ms. Hollingsworth's race discrimination claim (Count II) is granted.

### B. Direct or Circumstantial Evidence

A plaintiff may establish discrimination or retaliation by direct or circumstantial evidence. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). "Where the non-movant presents direct evidence that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). The Eleventh Circuit defines direct evidence as "evidence which if believed, proves existence of fact in issue without inference or presumption." *Rollins v. TechSouth, Inc.*, 883 F.2d 1525, 1528 n.6 (11th Cir. 1987) (citation, emphasis, and brackets omitted). Direct evidence does not include evidence that only suggests discrimination. *See Early v. Champion Intern. Corp.*, 907 F.2d 1077, 1081–82 (11th Cir. 1990). Direct evidence is not subject to more than one interpretation. *See Harris v. Shelby Cty. Bd. of Educ.*, 99 F.3d 1078, 1083 n.2 (11th Cir. 1996).

Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate" based on some impermissible factor. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). "To amount to direct evidence, a statement must: (1) be made by a decisionmaker; (2) specifically relate to the

challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1256, 1364 (M.D. Fla. 2001).

Even though Ms. Sly's and Ms. Hollingsworth's claims are personal, they jointly proffer the same alleged direct evidence to support their position that the Bay Pines VA generally fosters a hostile work environment and promotes retaliation. The plaintiffs argue there is direct evidence of retaliatory animus and racial animosity.[13] (Doc. 71, pp. 1–5). The plaintiffs assert the Secretary has engaged in a pattern and practice of retaliation against employees participating in EEO activity. (*Id.* at p. 5). The plaintiffs argue the Chief of Staff and Director of Bay Pines built a scheme to retaliate against employees who engaged in EEO activity. (*Id.* at p. 6). The plaintiffs assert Ms. Brown worked directly with the Chief of Staff and the Director and has stated animosity about employees engaging in EEO activity and about black managers. (*Id.*). The plaintiffs point to a statement from 2013 where Ms. Brown allegedly told Paul Jones not to hire an applicant, Linda LaFond Cohn, because she engaged in EEO activity. (*Id.* at p. 14; *see also* Doc. 71, Ex. B, ¶ 6). The plaintiffs assert Ms. Brown allegedly told Ms. Griffin-Hall that Ms. Griffin-Hall was hiring too many black people. (Doc. 71, p. 6; *see also* Doc. 71, Ex. A-2, ¶ 6). The plaintiffs argue prior litigation involving Ms. Brown shows direct evidence of retaliatory animus and racial animosity. (Doc. 71, pp. 7–14). The plaintiffs assert Ms. Griffin-Hall followed Ms. Brown in retaliating against individuals who engaged in EEO activity because

---

[13] As discussed above, Ms. Hollingsworth is barred from bringing her racial discrimination claim because she failed to exhaust her administrative remedies.

Ms. Brown could protect Ms. Griffin-Hall. (*Id.* at pp. 16–17).

The Secretary argues the plaintiffs mistakenly interpret a history of lawsuits against Bay Pines as direct evidence of a scheme to retaliate. (Doc. 75, p. 2). The Secretary asserts the lawsuits are not direct evidence of some institutionalized scheme to retaliate or discriminate. (*Id.* at pp. 2–3). The Secretary argues the plaintiffs must offer admissible evidence that management officials—Ms. Griffin-Hall—are motivated by a discriminatory or retaliatory intent. (*Id.* at p. 3). The Secretary asserts the plaintiffs cannot build a case around Ms. Brown or her statements because she is several levels of supervision removed from the plaintiffs and was not responsible for any adverse employment decision for Ms. Sly or Ms. Hollingsworth. (*Id.* at p. 4).

Here, the plaintiffs fail to show the comments attributed to Ms. Brown about hiring too many black managers constitute direct evidence of retaliatory animus by Ms. Brown. First, there is a dispute about whether Ms. Brown told Ms. Griffin-Hall she was hiring too many black managers. Even though many employees at Bay Pines, including Ms. Sly, believe Ms. Brown made this statement (Doc. 71, Ex. A-2, ¶ 6; Doc. 71, Ex. E-2), Ms. Griffin-Hall denies that Ms. Brown said that to her (Doc. 65, Ex. C, 37:11–25), and Ms. Brown denies saying that statement (Doc. 65, Ex. D, 91:5–92:16). Also, in a deposition, Chris Feld[14] stated she was the person who told Ms. Griffin-Hall she was hiring too many blacks. (Doc. 65, Ex. H, 6:19–7:24).

_____

[14] Ms. Feld worked for the VA for thirty years, and Ms. Griffin-Hall was her supervisor for three to four years. (Doc. 65, Ex. H, 5:6–7, 6:11–12).

Even taking the facts in the light most favorable to the non-moving party, the statements attributed to Ms. Brown do not constitute direct evidence of retaliatory animus against Ms. Sly or Ms. Hollingsworth. Ms. Brown made the statement about not hiring Ms. Cohn in 2013, and that statement did not apply to the employment actions challenged by either Ms. Sly or Ms. Hollingsworth. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d, 1318, 1330 (11th Cir. 1998) ("[R]emarks . . . unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Additionally, Ms. Brown was not the decisionmaker for most of the challenged employment actions.[15] *See Chambers*, 132 F. Supp. 2d at 1364. For the attributed statement about hiring too many black managers, like the statement about prior EEO activity, Ms. Brown was not the ultimate decision maker, and the statement was not made in relation to the challenged adverse employment action for Ms. Sly.

Because there is no direct evidence[16] of retaliatory animus or discriminatory intent, the plaintiffs must use circumstantial evidence to support their claims—Ms. Sly's claims of retaliation, harassment and hostile work environment, and race discrimination and Ms. Hollingsworth's claims of retaliation and harassment and

---

[15] Although Ms. Brown was the ultimate decision maker for Ms. Sly's January 2019 reprimand (Doc. 85, p. 12), Ms. Brown's statement about EEO activity occurred in 2013 and did not relate to Ms. Sly's reprimand. Also, the attributed statement about hiring too many blacks occurred in or around 2015, another four years before Ms. Brown became involved in issuing the reprimand against Ms. Sly. (Doc. 71, Ex. A-2, ¶ 6; Doc. 71, Ex. E-2).

[16] Even construing the facts in the light most favorable to the non-moving party, the plaintiffs do not make a sufficient showing that the Bay Pines litigation history amounts to direct evidence that the management officials were motivated by a discriminatory or retaliatory intent.

hostile work environment.

## C. Title VII Retaliation Claim

Under Count I, Ms. Sly and Ms. Hollingsworth allege claims of retaliation under Title VII. (Doc. 83, ¶¶ 77–88). Title VII forbids employers from retaliating against employees because they opposed an unlawful employment practice. *Mealing v. Ga. Dep't. of Juvenile Justice*, 564 F. App'x 421, 427 (11th Cir. 2014). The anti-retaliation provision of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); *see also EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174–75 (11th Cir. 2000). To establish a prima facie retaliation case, the plaintiff must show: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal link between the protected activity and the adverse action. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2010) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

A plaintiff must merely prove the protected activity and the negative employment action are not wholly unrelated. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). To prove causation, the plaintiff must "show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). The plaintiff must also establish that her protected activity was

a but-for cause of the adverse employment decision. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Once the plaintiff establishes a prima facie retaliation case, the burden of production shifts to the defendant to rebut the presumption. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006). If the defendant can carry this burden, then the plaintiff must prove that the legitimate reasons offered by the employer for undertaking the adverse employment action were pretextual. *Id.*

The Secretary argues neither Ms. Sly nor Ms. Hollingsworth can establish a prima facie case of retaliation. (Doc. 65, pp. 14–15, 21–25, 27–29). But even if Ms. Sly or Ms. Hollingsworth could establish a prima facie case for retaliation, the Secretary offered legitimate, non-retaliatory reasons for the actions, and neither Ms. Sly nor Ms. Hollingsworth cannot establish those reasons are pretextual. (*Id.* at pp. 15–21, 25–27).

### 1. Statutorily Protected Activity

For a retaliation claim, the protected EEO activity must occur before the challenged personnel action. *Cormack v. N. Broward Hosp. Dist.*, No. 08–61367–CIV, 2009 WL 2731274, at *6 (S.D. Fla. Aug. 26, 2009). Title VII's retaliation provisions protect certain activity, as seen in the opposition clause and the participation clause. *McShane v. U.S. Attorney Gen.*, 144 F. App'x 779, 782 n.2 (11th Cir. 2005). Under Title VII's opposition clause, an employer cannot retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). When using the opposition

clause, a complaint is not a protected activity unless it satisfies two requirements. *Vidovic v. City of Tampa*, No. 8:16–cv–714–T–17AAS, 2017 WL 10294807, at *11 (M.D. Fla. Oct. 12, 2017). First, "a complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010). Second, the complaint must be based on a good faith, reasonable belief that the employer was engaged in an unlawful employment practice, but also the employee's "belief was objectively reasonable in light of the facts and records present." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997).

Similarly, the participation clause proscribes employers from retaliating against employees if the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e–3(a). Then the plaintiff must show at a minimum that the adverse act followed the protected conduct. *Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1284 (11th Cir. 1999).

The Secretary makes no argument about whether Ms. Sly participated in any statutorily protected activity after Ms. Sly's June 24, 2015 EEO complaint. (Doc. 65, pp. 14–23). However, the Secretary argues Ms. Hollingsworth did not engage in protected activity before Ms. Griffin-Hall recommended her termination. (*Id.* at p. 24). The Secretary asserts Ms. Hollingsworth did not contact an EEO counselor to complain about discrimination until December 22, 2016, two days after Ms. Griffin-

Hall sent a request to Human Resources to terminate Ms. Hollingsworth's probationary employment. (*Id.*).

Ms. Hollingsworth argues that shortly after starting at Bay Pines, she opposed what she believed was "disparate and inappropriate harassment of myself and others" by Ms. Griffin-Hall. (Doc. 71, p. 22). Ms. Hollingsworth asserts she started a harassment complaint with the facility EEO manager on December 14, 2016. (*Id.* at p. 23). Ms. Hollingsworth disputes that Ms. Griffin-Hall wrote a request to terminate Ms. Hollingsworth on December 20, 2016. (*Id.* at p. 24).

In November 2016, Ms. Hollingsworth vocalized her opposition of Ms. Griffin-Hall realigning Ms. Sly under Ms. Shaw-Hillman. (Doc. 65, Ex. B, 94:22–95:20). But in her deposition, Ms. Hollingsworth offered contradictory testimony about whether she believed Ms. Griffin-Hall realigned Ms. Sly because of her race. (Doc. 65, Ex. B, 100:4–11). On December 12, 2016, about two weeks after Ms. Hollingsworth vocalized her opposition to Ms. Griffin-Hall realigning Ms. Sly under Ms. Shaw-Hillman, Ms. Hollingsworth also drafted a memo that lacked any discussion of race discrimination toward Ms. Sly because of Ms. Griffin-Hall's proposed realignment. (Doc. 65, Ex. B-7). Ms. Hollingsworth's conversation with Ms. Griffin-Hall in November 2016 is not statutorily protected activity because Ms. Hollingsworth did not communicate a belief that Ms. Griffin-Hall's decision to realign ROI constituted unlawful discrimination toward Ms. Sly.

In her December 14, 2016 anti-harassment complaint, Ms. Hollingsworth complains Ms. Griffin-Hall makes the work environment hostile, harasses Ms.

Hollingsworth, and does not trust Ms. Hollingsworth to carry out her duties. (Doc. 65, Ex. B-2). Ms. Hollingsworth also complains about being called the baby of the service. (Doc. 65, Ex. B-2). Ms. Hollingsworth identifies no practice that constitutes unlawful employment discrimination in her complaint. Being treated differently because of a younger age is not age discrimination. *See Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 590–95 (2004). Ms. Hollingsworth's anti-harassment complaint is not statutorily protected activity because Ms. Hollingsworth identified no practice of unlawful discrimination by Ms. Griffin-Hall against Ms. Hollingsworth.

A genuine dispute of material fact exists as to whether Ms. Griffin-Hall sent a request to Human Resources to terminate Ms. Hollingsworth on December 20, 2016. This is material because if Ms. Griffin-Hall sent the request on that day, then Ms. Hollingsworth fails to meet the prima facie case for retaliation because she had not engaged in statutorily protected activity until her December 22, 2016 contact with an EEO counselor. Ms. Hollingsworth disputes Ms. Griffin-Hall's deposition testimony and documentation provided. (Doc. 65, Ex. B-16, p. 321; Doc. 65, Ex. N, 151:7–24). In an administrative proceeding before the Merit Systems Protection Board, Ms. Griffin-Hall testified she sent the memo at 10:43 am on December 20, 2016. (Doc. 65, Ex. N, 290:14–17, 295:1–4). But the documentation to support this testimony shows Ms. Griffin-Hall sent a sample "Written Counseling for probationary employee" to Human Resources. (Doc. 65, Ex. 7, p. 2908). The written counseling document differs significantly from the termination request that Ms. Griffin-Hall claims she sent on December 20, 2016. Because evidence is construed in the nonmoving party's favor,

the court must conclude Ms. Griffin-Hall sent a written counseling memo to Human Resources and not a request for termination. *See Cleveland*, 369 F.3d at 1193. Therefore, construing those facts in Ms. Hollingsworth's favor, Ms. Hollingsworth engaged in statutorily protected activity when she submitted her EEO complaint before Ms. Griffin-Hall sent a termination request to Human Resources.

## 2. Adverse Employment Action

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Some employer actions that negatively affect or inconvenience an employee do not qualify as adverse employment actions, but if the employment action "is a serious and material change in terms, conditions, or privileges of employment," then it is an adverse employment action. *Vidovic*, 2017 WL 10294807, at *7. An adverse employment action in retaliation is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68.

### a. Rosa Sly

Ms. Sly argues sixteen discrete acts were material adverse actions.[17] (Doc. 71, pp. 31–32). The Secretary does not dispute the occurrence of the actions identified by

---

[17] Two of those alleged material adverse actions are Ms. Sly's responsibility over the Records Management Office and Ms. Griffin-Hall requiring Ms. Sly to perform staff level processing and restricting her supervisory duties. (Doc. 83, ¶¶ 46, 49). The Secretary argues these two discrete acts alleged by Ms. Sly occurred before the June 2015 EEO complaint, and there is no causal nexus between those actions and her protected EEO activity. (Doc. 65, p. 22, n.4). Because neither action is a material adverse action, the court will not address whether there is a causal link.

Ms. Sly but argues most of the alleged acts do not constitute a material adverse action. (Doc. 65, pp. 14–15, 21–23). The Secretary argues none of the discrete acts are material adverse actions because Ms. Sly was not dissuaded from making a charge of discrimination. (Doc. 65, pp. 22–23). Case law in this circuit and district state when the claimant is not deterred from filing an EEO claim, there is no adverse employment action. *See Burgos v. Napolitano*, 330 F. App'x 187, 191 (11th Cir. 2009); *Tonkyro v. Sec'y, Dep't of Veterans Affairs*, No.:8:16–cv–2419–T–36AEP, 2018 WL 5830584, at * 12 (M.D. Fla. Nov. 7, 2018).

A plaintiff must show a reasonable person would have found the challenged action was material adverse, and the court must "separate significant from trivial harms." *See Burlington*, 548 U.S. at 68 (explaining minor annoyances and personality conflicts, which all employees experience, are not material adverse actions); *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) (finding the performance of more menial tasks did not amount to an adverse employment action); *Turner v. Ga. Sec'y of State*, 848 F. Supp. 2d 1361, 1383 (M.D. Ga. 2012) ("[V]erbal criticism, unfair comments, and being yelled at are not considered adverse employment actions."). "An action which, it turns out, had no effect on an employee is not an adverse action." *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000) (overruled on other grounds by *Burlington*).

Ms. Sly alleges her responsibility over the Records Management Office is a material adverse action because she had to devote substantial time to those duties with no training. (Doc. 83, ¶ 46). Ms. Sly received the responsibility as part of her

prior EEO settlement. (Doc. 65, Ex. A, 15:23–16:6). Ms. Sandra Shaw also handled some of the work in records management after prior records manager, Mr. Accetta, retired, and Ms. Sly stated she hardly interacted with records management. (Doc. 65, Ex. A, 18:13–19:25). Once Ms. Bowman started at Bay Pines, Ms. Bowman had sole responsibility for records management. (Doc. 65, Ex. A, 20:2–4). Therefore, Ms. Sly's responsibility over Records Management Office and lack of training related to the office was not a material adverse action because even construing the facts most favorable to Ms. Sly, she did not have responsibility over records management and did not need training related to those duties.

The following eight of Ms. Sly's alleged sixteen discrete acts are not material adverse actions and instead are trivial harms: (1) Ms. Griffin-Hall requiring Ms. Sly to perform staff level processing of medical records and restricting her supervisory duties (Doc. 83, ¶ 49); (2) Ms. Griffin-Hall limiting access to a secured room and taking away Ms. Sly's keys to the secured room because of increased missing requests (*Id.* at ¶ 63); (3) Ms. Griffin-Hall criticizing Ms. Sly for procedural changes implemented by Ms. Griffin-Hall (*Id.* at ¶ 66); (4) the privacy violation memo identifying Ms. Sly as responsible for missing patient requests (*Id.* at ¶ 67); (5) Ms. Griffin-Hall's consideration of centralizing ROI under Lee County (*Id.* at ¶ 68); (6) Ms. Griffin-Hall sending emails criticizing Ms. Sly's leadership ability and assigning Ms. Sly to process requests at the front desk (*Id.* at ¶ 74a); (7) Ms. Griffin-Hall directing Ms. Sly to audit her staff personally, a job normally done by the leads (*Id.* at ¶ 74d); and (8) Ms. Griffin-Hall directing Ms. Sly to work the front desk processing

Freedom of Information Act requests (*Id.* at ¶ 74e).

In November 2015, Ms. Sly received her FY 2015 performance appraisal by Ms. Griffin-Hall with an overall rating of "fully successful." (Doc. 83, ¶ 55). Before this performance appraisal, Ms. Sly only received "outstanding" ratings, which led to performance bonuses. (Doc. 65, Ex. A, 282:6–12). Because Ms. Griffin-Hall rated Ms. Sly as "fully successful," Ms. Sly did not receive a performance bonus, which can be up to two percent of pay. (Doc. 65, Ex. A, 281:24–283:1). Because Ms. Sly's "fully successful" rating constituted a material change in the privilege—her performance bonus—of her employment, the "fully successful" rating was a material adverse action. *See Vidovic*, 2017 WL 10294807, at *7. However, Ms. Griffin-Hall's mid-term evaluation stating Ms. Sly's performance needed improvement to be "fully successful" (Doc. 83, ¶ 74f) is not a material adverse action. Ms. Sly can improve her performance, and there is no material consequence to Ms. Sly's employment and no impact on a potential performance bonus.

In June 2016, Ms. Griffin-Hall required Ms. Bowman to issue Ms. Sly a Performance Improvement Plan (PIP). (Doc. 83, ¶ 64; *see also* Doc. 65, Ex. A-23). The PIP required Ms. Sly to have hands-on training and coaching from Ms. Shaw-Hillman and to meet weekly with Ms. Bowman to discuss completed or in progress work. (Doc. 65, Ex. A-23, p. 1952). By September 2016, Ms. Sly successfully completed her PIP. (Doc. 65, Ex. A-22). Ms. Sly being placed on PIP was not a material adverse action because it did not limit her employment opportunities and the additional tasks, training, and weekly meetings were minimal. *See Jarvis v. Siemens Medical*

*Solutions USA, Inc.*, 460 F. App'x 851, 858–59 (11th Cir. 2012).

In January 2019, Ms. Griffin-Hall issued a Notice of Proposed Seven-Day Suspension against Ms. Sly. (Doc. 83, ¶ 76b; *see also* Doc. 65, Ex. A-35). But Ms. Sly did not receive the proposed suspension from duty and pay. (Doc. 85, p. 12). Ms. Sly also alleges Ms. Griffin-Hall's instruction to allow students to use Ms. Sly's employee badge to scan documents is an adverse action. (Doc. 83, ¶ 74b). While Ms. Sly argues allowing others to use her badge is a security violation (Doc. 65, Ex. A-27, p. 377), no students asked or used her badge (Doc. 65, Ex. A, 245:1–5). Therefore, the proposed suspension and Ms. Griffin-Hall's instruction to allow students to use Ms. Sly's badge are not material adverse actions.

Ms. Sly's remaining alleged discrete acts are the October 2018 reprimand and the January 2019 reprimand. (Doc. 83, ¶¶ 76a, 76c). The Secretary practically concedes the reprimands are material adverse actions. The reprimands remain in Ms. Sly's employment file for up to three years or may be withdrawn and destroyed after two years. (Doc. 65, Ex. A-31; Doc. 85, p. 12). During that pending time, a reprimand "may be used in determining an appropriate penalty if further infractions occur." (Doc. 65, Ex. A-31; Doc. 85, p. 12). For the October 2018 reprimand, Ms. Sly stated it affected her performance evaluation and her potential bonus. (Doc. 65, Ex. A, 276:17–283:9). While there is no evidence of economic impact from the August 2019 reprimand (Doc. 85, p. 3), the reprimand could provide proof for further actions against Ms. Sly including termination.

Construing the all the facts in Ms. Sly's favor, thirteen of the alleged discrete

acts are not material adverse actions. But three of the alleged discrete acts are material adverse actions: (1) October 2018 reprimand; (2) August 2019 Reprimand; and (3) Ms. Sly's "fully successful" rating for FY 2015 because the rating did not include the pay bonus of her prior "outstanding" ratings.

### b.  Devona Hollingsworth

Ms. Hollingsworth alleges four discrete acts as material adverse actions: (1) Ms. Griffin-Hall directing others not to grant Ms. Hollingsworth's request for temporary promotion (Doc. 83, ¶ 71b); (2) Ms. Griffin-Hall sending a department wide email asking for volunteers for a temporary Acting Chief position for which Ms. Griffin-Hall did not think Ms. Hollingsworth was qualified (*Id.* at ¶ 71d); (3) Ms. Hollingsworth being requested to repay an overpayment caused by a timekeeper error during her military leave (*Id.* at ¶ 71e); and (4) Ms. Hollingsworth's termination in July 2017 (*Id.* at ¶ 71f).

The Secretary believes Ms. Hollingsworth cannot establish a prima facie case because she cannot show she engaged in statutory protected activity. (Doc. 65, pp. 24–25). Therefore, the Secretary makes no argument about whether those acts are material adverse actions. Because the court, construing the facts in favor of Ms. Hollingsworth at this summary judgment stage, determined Ms. Hollingsworth did engage in statutorily protected activity before Ms. Griffin-Hall requested permission to terminate Ms. Hollingsworth, the court must address whether Ms. Hollingsworth's alleged discrete acts are material adverse actions. Even construing the facts in Ms. Hollingsworth's favor, three of the four discrete acts are not material adverse actions.

Ms. Hollingsworth mistakenly received payment for two days of work at Bay Pines when she was on military leave but seeks to blame Ms. Griffin-Hall for the oversight with no evidence. (Doc. 65, Ex. B, 122:14–127:13). Requiring the repayment of something one is not owed is not material adverse. *See Lawrence v. Lew, Sec'y of Treasury*, 156 F. Supp. 3d 149, 173 (D.D.C. 2016).

For the acts relating to the temporary promotion, Ms. Hollingsworth acknowledge she was not entitled to the temporary promotion, but it was "case specific on the reason for the temp promotion." (Doc. 65, Ex. B, 105:20–23). Various factors go into considering the temporary position, and it also requires a recommendation from the service chief, Ms. Griffin-Hall. (Doc. 65, Ex. B, 105:24–106:6). Ms. Hollingsworth not receiving the promotion and subsequent email asking someone to take over while Ms. Hollingsworth was on leave are not material adverse actions because it did not make a "material change in terms, conditions, or privileges of employment." *See Vidovic*, 2017 WL 10294807, at *7.

Construing the facts in Ms. Hollingsworth's favor, Ms. Hollingsworth's termination is the only material adverse action. *See Jefferson v. Sewon America, Inc.*, 891 F.3d 911 (11th Cir. 2018) ("Termination is a materially adverse action.").

### 3.    Legitimate, Nondiscriminatory Reason

Once the plaintiff establishes a prima facie retaliation case, the burden of production shifts to the defendant to rebut the presumption to offer legitimate, nondiscriminatory reasons for the adverse actions. *Brooks*, 446 F.3d at 1162. The defendant's burden is to "produce evidence that could allow a rational fact finder to

conclude" the defendant's actions were not motivated by discriminatory animus. *Standard*, 161 F.3d at 1331.

Because Ms. Sly and Ms. Hollingsworth established a prima facie case of discrimination, the Secretary must articulate legitimate, nondiscriminatory reasons for the adverse actions. For Ms. Sly, the Secretary argues the reason for the adverse actions was Ms. Sly's poor performance. (Doc. 65, pp. 15–16). Poor performance is a legitimate, nondiscriminatory reason for adverse employment action. *See Lui v. University of Miami*, 138 F. Supp. 3d 1360, 1373 (S.D. Fla. 2015). For Ms. Hollingsworth, the Secretary argues the reason for the adverse actions was Ms. Hollingsworth's failure to follow instructions, her abrasive and disrespectful attitude and demeanor in BOS, and her privacy violation. (Doc. 65, pp. 25–26). "[J]ob performance, failure to follow instructions, and insubordination are all legitimate, nondiscriminatory considerations." *See Ashe v. Aronov Homes, Inc.*, 354 F. Supp. 2d 1251, 1259 (M.D. Ala. 2004). Thus, the Secretary satisfies the burden of providing legitimate, nondiscriminatory reasons for the adverse actions against both Ms. Sly and Ms. Hollingsworth.

### 4.    Pretext

To rebut an employer's legitimate, nondiscriminatory reasons for an adverse employment action, "the employee must produce evidence that directly establishes discrimination or that permits the jury to reasonably disbelieve the employer's proffered reason." *Jenkins v. Humphrey Mgmt. & Hospitality*, No. 6:12–cv–116–Orl–36GJK, 2014 WL 4206225, at *7 (M.D. Fla Aug. 25, 2014) (citing *Steger v. General*

*Elec. Co.,* 318 F.3d 1066, 1076 (11th Cir. 2003)). Specifically, the plaintiff can either show directly that a "discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981). The plaintiff must address the employer's reason head on with some evidence of pretext, rather than simply quarreling with the reason. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004) (abrogated on other grounds). A reason is not pretext for retaliation unless the plaintiff shows both the reason was false and retaliation was the real reason for the employment decision. *Brooks*, 446 F.3d at 1163 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

### a. Rosa Sly

Ms. Sly argues the Secretary's reason for Ms. Sly's adverse actions—her poor performance—is pretextual and based on disputed material facts. (Doc. 71, p. 34). At the center of Ms. Sly's alleged poor performance is the backlog and the missing requests both of which Ms. Sly argues resulted from Ms. Griffin-Hall's changes in policies and practices rather than Ms. Sly not following proper procedures. (*Id.* at pp. 34–35). Ms. Sly asserts there were no privacy reports before Ms. Griffin-Hall came to BOS and she had no problems with missing requests. (*Id.* at p. 36).

While the Secretary does show issues with ROI in Ms. Shaw-Hillman's evaluation of Ms. Sly's operation, Ms. Shaw-Hillman does not address whether the issues result from Ms. Sly or Ms. Griffin-Hall. (Doc. 65, Ex. E-1, pp. 1796–1805). A dispute of material fact exists with who or what caused the backlog and missing

requests. Ms. Sly produces evidence showing that, while backlogs occurred before (Doc. 65, Ex. A, 51:22–24), the most recent backlog resulted from procedures Ms. Griffin-Hall put into place (Doc. 71, Ex. Y, ¶¶ 6, 7; Doc. 65, Ex. G, 19:10–21:25). Ms. Sly is correct when she states there were no prior privacy office reports addressing missing reports before 2014, but whether a problem existed despite the lack of documentation is a factual determination to be made by the jury.

Because Ms. Sly addressed the Secretary's proffered reasons by pointing out a dispute on a material fact that involves factual and credibility determinations, Ms. Sly presents sufficient triable issues.

### b. Devona Hollingsworth

Ms. Hollingsworth argues the facts do not support the Secretary's claim that Ms. Hollingsworth's demeanor was inappropriate. (Doc. 71, p. 24). Specifically, Ms. Hollingsworth asserts the only people critical of her demeanor were individuals influenced by Ms. Brown and who assisted Ms. Brown, through Ms. Griffin-Hall, in terminating Ms. Hollingsworth. (*Id.*). Ms. Hollingsworth argues the privacy violation also is pretextual because no employee on probation had every been terminated for a single privacy violation. (*Id.* at p. 25).

The Secretary provides testimony and evidence addressing what the witnesses perceive as Ms. Hollingsworth's abrasive demeanor. (Doc. 65, Ex. O, 35:5–8, 34:22; Doc. 65, Ex. B-16, pp. 343–44). Ms. Hollingsworth also produces testimony from other employees not perceiving Ms. Hollingsworth's demeanor as abrasive but as professional and competent. (Doc. 71, Ex. BB p. 570–73; Doc. 71, Ex. A-5).

Additionally, Ms. Hollingsworth provides Mr. Cecil Johnson's testimony that one privacy violation does not amount to a broad determination that she did not follow procedures warranting termination. (Doc. 71, Ex. JJ, 171:1–24).

Ms. Hollingsworth sufficiently counters the Secretary's proffered reasons by providing conflicting testimony that requires credibility and factual determinations that a jury must decide.

*     *     *

Construing the facts in favor of the non-moving party, Ms. Sly and Ms. Hollingsworth establish a prime facie case of retaliation. The Secretary provides legitimate, nondiscriminatory reasons for the material adverse actions taken against Ms. Sly and Ms. Hollingsworth. Depending on credibility determinations and how competing evidence is weighed, a reasonable jury could conclude the Secretary's proffered reasons are pretextual and find for Ms. Sly and Ms. Hollingsworth on their retaliation claims. Therefore, the Secretary's motion for summary judgment on Ms. Sly's and Ms. Hollingsworth's retaliation claims (Count I) is denied.

### D.    Harassment and Hostile Work Environment

Under Count II, Ms. Sly and Ms. Hollingsworth allege claims of harassment and hostile work environment under Title VII based on reprisal and race. (Doc. 83, ¶¶ 89–94). To succeed on a retaliatory hostile work environment claim, a plaintiff must prove: (1) she engaged in protected EEO activity; (2) after doing so, she faced unwelcome harassment; (3) the harassment was based on her protected activity; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or

privilege of employment. *Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012). Causation still "matters in a retaliatory hostile work environment claim—that is, the severe and pervasive accumulation of actions that would not have occurred but-for the retaliatory reason, even if each action alone was justifiable." *Id.* at 1313.

"As opposed to discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire, a hostile work environment claim addresses acts 'different in kind' whose 'very nature involves repeated conduct,' such as 'discriminatory intimidation, ridicule, and insult.'" *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–16 (2002)). While discrete acts of retaliation cannot alone support a hostile work environment, a "jury could *consider* discrete acts as part of a hostile work environment claim." *Gowski*, 682 F.3d at 1312–13 (emphasis in original). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117.

Whether harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment contains both an objective and subjective component. *Gowski*, 682 F.3d at 1312. The behavior must create an environment a reasonable person would find hostile or abusive and the victim subjectively categorizes to be abusive. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). "In evaluating the objective severity of the harassment, [the courts] consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is threatening or humiliating; and (4) whether the

conduct unreasonably interferes with the employee's job performance." *Id.*

Throughout this inquiry, courts must remain mindful that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal quotations omitted). The "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* The Eleventh Circuit stated "Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place." *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir. 1986) (internal quotations omitted).

### 1. Rosa Sly

First, the Secretary argues any incidents and discrete acts alleged by Ms. Sly before she filed her June 2015 EEO Complaint cannot support a hostile work environment claim. (Doc. 65, p. 35). The Secretary asserts Ms. Sly relies on the personnel actions taken against her but also the long chronology of events in ROI since she filed her EEO complaint. (*Id.* at pp. 35–36). The Secretary argues Ms. Sly cannot create an actionable hostile work environment by the sheer number of events but instead must show the events are sufficiently severe or pervasive, which she cannot do. (*Id.* at p. 37). The Secretary argues Ms. Sly and Ms. Hollingsworth provide no evidence of physically threatening conduct. (*Id.* at p. 39). But the plaintiffs correctly state physically threatening conduct is not a requirement. (Doc. 71, p. 38).

Ms. Sly argues the Secretary took multiple actions that affected her ability to be a supervisor, maintain respect and reputation in front of employees, and achieve

prior standards. (*Id.*). Ms. Sly argues Ms. Griffin-Hall routinely targeted and disciplined Ms. Sly for problems caused by Ms. Griffin-Hall. (*Id.*). Ms. Sly asserts if someone is suffering demeaning statements or actions in their capacity as an employee that should show a hostile work environment. (*Id.*).

Any incidents or discrete acts before Ms. Sly engaged in protected activity fail to meet the causation standard required for a hostile work environment. *See Gowski*, 682 F.3d at 1313. The discrete acts involving Ms. Sly's two reprimands and her "fully successful" rating also cannot support the hostile work environment on their own. *See McCann*, 526 F.3d at 1378. But Ms. Sly identifies thirteen other personnel actions in her discrete acts and also provides other events to attempt to paint a picture of the hostile work environment Ms. Griffin-Hall created. However, simply because Ms. Sly felt Ms. Griffin-Hall created a hostile work environment does not mean Ms. Sly has an actionable hostile work environment. *See Baroudi v. Shinseki*, No.: 8:14–cv–1099–T–30TBM, 2015 WL 6165493, at *2–3 (M.D. Fla. Oct. 20, 2015) (finding some eighty incidents alleged for hostile work environment as insufficient evidence of a hostile work environment).

Most discrete acts and events relied on by Ms. Sly involve "petty office squabbles," differences in management styles, and communications issues common in workplaces, rather than severe or pervasive events that create a hostile work environment claim. *See Baroudi v. Sec'y, U.S. Dep't of Veteran's Affairs*, 616 F. App'x 899, 904 (11th Cir. 2015). Ms. Sly complained Ms. Griffin-Hall made Ms. Sly do unfavorable office assignments, failed to inform her of meetings, questioned and

criticized Ms. Sly and her decisions in front of employees, and removed Ms. Sly's access to a secured room where missing requests were found. These incidents are not sufficiently severe or frequent to support a hostile work environment claim.

### 2. Devona Hollingsworth

The Secretary argues Ms. Hollingsworth's event from November 2016 before she filed engaged in EEO activity in December 2016 cannot support a hostile work environment claim. (Doc. 65, p. 35). The Secretary asserts Ms. Hollingsworth's remaining five events she identifies as the basis of her hostile work environment do not support a hostile work environment claim. (*Id.* at p. 38). The Secretary argues Ms. Hollingsworth's discrete acts cannot support a hostile work environment. (*Id.*). The Secretary asserts Ms. Hollingsworth's absences from the workplace are a significant factor in assessing the frequency and severity of the contact. (*Id.* at p. 39). Ms. Hollingsworth makes the same arguments as Ms. Sly about the hostile work environment. (Doc. 71, pp. 37–39).

Ms. Hollingsworth's November 2016 event occurred before Ms. Hollingsworth engaged in EEO activity and so does not meet the causation standard for a hostile work environment claim. *See Gowski*, 682 F.3d at 1313. Ms. Hollingsworth's termination is a discrete act that alone cannot support a hostile work environment claim. *See McCann*, 526 F.3d at 1378. The other acts[18] focus on Ms. Hollingsworth's performance as an employee and monitoring an employee's performance does not

---

[18] The other acts include when Ms. Griffin-Hall criticized Ms. Hollingsworth for not agreeing with her, for Ms. Hollingsworth speaking back to Ms. Griffin-Hall, and for Ms. Hollingsworth not following Ms. Griffin-Hall's requests. (Doc. 65, p. 38).

amount to harassment or a hostile work environment. *See McCoy v. Macon Water Auth.*, 966 F. Supp. 1209, 1221 (M.D. Ga. 1997). Additionally, the lack of frequency of the events is highlighted by Ms. Hollingsworth's absence from BOS. (*See* Doc. 65, Ex. B, 109:13– 123:16 (showing intermittent interaction between October 2016 and May 2017 due to various leaves and vacations by both Ms. Hollingsworth and Ms. Griffin-Hall)). These incidents are not sufficiently severe or frequent to support a hostile work environment claim.

*     *     *

After considering the totality of the circumstances, the Secretary's motion for summary judgment on Ms. Sly's and Ms. Hollingsworth's hostile work environment claims (Count II) is granted.

### E.     Title VII Race Discrimination

Under Count III, Ms. Sly and Ms. Hollingsworth allege claims of race discrimination. (Doc. 83, ¶¶ 95–101). As discussed above, Ms. Hollingsworth did not exhaust her administrative remedies for her race discrimination claim. Therefore, the court only addresses the merits of Ms. Sly's race discrimination claim.

Race discrimination claims may be considered under either a mixed-motive or single-motive theory. *Quigg v. Thomas Cty. School Dist.*, 814 F.3d 1227, 1237 (11th Cir. 2016). Under the single-motive theory, the courts typically apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Trask*, 822 F.3d at 1191. Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination,

creating a rebuttable presumption that the employer acted illegally. *McDonnell Douglas*, 411 U.S. at 802–03. To establish a prima facie case of race discrimination under Title VII, the plaintiff must show: (1) she was a member of protected class; (2) she faced an adverse employment action; and (3) similarly situated employees outside the protected class were treated more favorably. *Wilson*, 376 F.3d at 1087.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate "a legitimate, non-discriminatory reason for the adverse employment action." *Brooks*, 446 F.3d at 1162 (citing *McDonnell Douglas*, 411 U.S. at 802). Then the burden shifts back to the plaintiff to show the stated reason is pretextual and not the true reason for the adverse employment action. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007).

Under the mixed-motive theory, the plaintiff need only offer "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1239 (internal quotations omitted). Under single-motive and mixed-motive theories, the plaintiff "will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Under the single-motive theory, for summary judgment purposes, the Secretary does not contest Ms. Sly can establish a prima facie case for race discrimination under the *McDonnell Douglas* framework. (Doc. 65, p. 31). The

Secretary argues the reason for the adverse actions was Ms. Sly's poor performance. (*Id.* at pp. 15–16).

The Secretary argues Ms. Sly cannot show the Secretary's proffered reasons for its actions are pretextual. (*Id.* at p. 31). To show pretext at summary judgment, Ms. Sly must put forth evidence to show the Secretary had "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [its] proffered legitimate reasons for its action that a reasonable fact find could find them unworthy of credence." *See Porter v. American Cast Iron Pipe Co.,* No. 10–14017, 2011 WL 1990667, at *1 (11th Cir. May 23, 2011) (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)).

Ms. Sly relies on the same discrete acts to show Ms. Griffin-Hall also engaged in race discrimination. (Doc. 83, ¶ 97). While those discrete acts create triable issues on pretext for a retaliation claim, Ms. Sly fails to show the Secretary's proffered reasons are pretextual for her race discrimination claim. Ms. Sly's argument that Ms. Griffin-Hall treated Ms. Shaw-Hillman, Ms. Sly's white counterpart in Lee County, differently than she treated Ms. Sly is unsupported by the facts. Even without having missing requests at Lee County, Ms. Shaw-Hillman stated she often felt she was being punished because of what was happening at Bay Pines. (Doc. 65, Ex. E, 129:3–5). Ms. Sly also never heard Ms. Griffin-Hall make any "unflattering comments about African-Americans" but inferred racial animosity when Ms. Griffin-Hall sought to assist Ms. Sly with "speaking crisply" and going over presentations. (Doc. 65, Ex. A, 48:11–16, 49:3–50:12). Ms. Griffin-Hall had a different management

style than the previous Chief of BOS which led her to clash with various employees, both white and black. (Doc. 65, Ex. F, 31:4–32:14; Doc. 65, Ex. G, 38:23–47:25). Ms. Sly puts forth no evidence showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Secretary's proffered reasons, but unsuccessfully argues the court should apply a mixed-motive theory. *See Porter*, 2011 WL 1990667, at *1.

Ms. Sly argues race is a motivating factor and that alone should make summary judgment fail. (Doc. 71, p. 33). But Ms. Sly makes no argument about how Ms. Sly's race was a motivating factor in the Secretary's adverse actions. The Secretary took adverse actions against Ms. Sly with issuing the October 2018 and January 2019 reprimands that stay in her personnel folder and can affect any future actions taken by the Secretary. However, Ms. Sly's discrete acts do not show her race played a role in those adverse actions. Rather, the Secretary points to Ms. Sly's alleged poor performance as the legitimate reason the Secretary took those adverse actions, and Ms. Sly provides no facts to show race instead was a motivating factor in those decisions. Ms. Sly presents no facts showing a triable issue of fact about Ms. Griffin-Hall's discriminatory intent.

Therefore, the Secretary's motion for summary judgment on Ms. Sly's race discrimination claim (Count III) is granted.

## IV. CONCLUSION

Therefore, the following is **ORDERED:**

1. The Secretary's Motion for Summary Judgment as to Ms. Sly's claims

(Doc. 65) is **GRANTED IN PART** and **DENIED IN PART**.

    a.    The Secretary's motion is **DENIED** as to Ms. Sly's retaliation claim (Count I).

    b.    The Secretary's motion is **GRANTED** as to Ms. Sly's harassment and hostile work environment claim (Count II) and race discrimination claim (Count III).

2.    The Secretary's Motion for Summary Judgment as to Ms. Hollingsworth's claims (Doc. 65) is **GRANTED IN PART** and **DENIED IN PART**.

    a.    The Secretary's motion is **DENIED** as to Ms. Hollingsworth's retaliation claim (Count I).

    b.    The Secretary's motion is **GRANTED** as to Ms. Hollingsworth's harassment and hostile work environment claim (Count II) and race discrimination claim (Count III).

3.    The court will have a telephonic hearing to schedule the final pretrial conference and trial. No later than **12 pm on April 3, 2020,** the parties must submit a joint notice on the docket advising which date and time *all* parties jointly choose for the telephonic scheduling hearing.

    a.    April 8th – 11 a.m., 1 p.m., 2 p.m., or 3 p.m.

    b.    April 9th – 10 a.m., 1 p.m., 2 p.m., or 3 p.m.

    c.    April 10th – 10 a.m., 11 a.m., 1 p.m., 2 p.m., or 3 p.m.

    d.    April 13th – 10 a.m., 11 a.m., 1 p.m., 2 p.m., or 3 p.m.

e.    April 14th – 10 a.m., 11 a.m., 2 p.m., or 3 p.m.

**ORDERED** in Tampa, Florida, on March 24, 2020.

AMANDA ARNOLD SANSONE
United States Magistrate Judge