# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ROSA SLY and
DEVONA HOLLINGSWORTH,**

   **Plaintiffs,**

**v.**                                                    **Case No. 8:17-cv-1868-AAS**

**SECRETARY, DEPARTMENT
OF VETERANS AFFAIRS,**

   **Defendant.**
_____/

## <u>ORDER</u>

The plaintiffs Rosa Sly and Devona Hollingsworth (collectively, the plaintiffs) move for attorney's fees in the amount of $808,472.50. (Doc. 192, p. 26). The defendant Secretary, Department of Veteran Affairs (the VA) argues the plaintiffs are not entitled to more than $102,108.50 in attorney's fees. (Doc. 194, p. 20). The plaintiffs filed a reply to the VA's response in opposition. (Doc. 199). Per the Settlement Agreement (Doc. 190) signed on May 29, 2025, the plaintiffs' entitlement to attorney's fees is not disputed.

The plaintiffs also request costs and attorney's fees for time spent on litigating their entitlement to attorney's fees (fees on fees). (Docs. 192, p. 25; 200). The VA is opposed to the plaintiffs' requests for costs and fees on fees. (Doc. 202).

## I.    BACKGROUND

On May 18, 2015, Plaintiff Rosa Sly initiated her EEO complaint. (Doc. 192, p. 1). Ms. Sly went through the Agency's process and then filed this case on August 7, 2017. (*Id.*). Plaintiff Devona Hollingsworth initiated her EEO complaint on January 28, 2017. Ms. Hollingsworth went through the Agency's process. On April 4, 2019, Ms. Sly filed the second amended complaint adding Ms. Hollingsworth as a plaintiff.

The plaintiffs sued the VA asserting seven claims under Title VII of the Civil Rights Act of 1964. Each plaintiff asserted a retaliation claim, a harassment and hostile work environment claim, and racial discrimination claims against the VA. The plaintiffs also brought a claim for injunctive relief against the VA, seeking preliminary and permanent injunctions.

The VA moved for summary judgment on July 24, 2019. The third amended complaint was filed on October 19, 2019. The court granted the motion for summary judgment on the race discrimination and hostile work environment claims and denied summary judgment on the retaliation claim. Subsequently, in April 2020, the parties agreed additional briefing was needed to address the Supreme Court's issued opinion in *Babb v. Wilkie*, 589 U.S. 399 (2020) and the Eleventh Circuit's opinion in *Babb v. Sec'y, Dept. of Veterans Affairs*, 992 F.3d 1193 (11th Cir. 2021). Ultimately, on April 22, 2022, the court determined it was not required to change its prior order.

After extensive discovery including, a total of 27 depositions of 15 witnesses and over 8,000 pages of documents exchanged, the parties reached a settlement agreement on April 11, 2025, which was signed on May 29, 2025. The settlement agreement awarded the plaintiffs a total of $175,000 and non-monetary relief. The court retained jurisdiction to determine the reasonable amount of the plaintiffs' attorney's fees.

## II.    ANALYSIS

In this case, attorney's fees are warranted pursuant to the Settlement Agreement. The Settlement Agreement is a contractual fee-shifting agreement. *See In re Home Depot Inc.*, 931 F.3d 1065, 1078−79 (11th Cir. 2019) (identifying the instance "when the parties agree in contract that one party will pay attorney's fees" as a fee-shifting case). "Ordinarily, after classifying the fee arrangement, the next question would be which method the court should use to calculate the attorney's fees." *Id.* at 1082. "Where the parties agree that one party will pay the other party's legal fees, they agree to fee shifting, and the 'lodestar' method is used to calculate reasonable attorneys' fees." *Griffith v. McDonough*, No. 20-14464, 2021 WL 4461605 at *1 (11th Cir. Sept. 29, 2021); *see Home Depot*, 931 F.3d at 1082, 1085 (applying the lodestar method to a contractual fee-shifting case). In addition, the Eleventh Circuit has applied the statutory fee-shifting precedent to contractual fee-shifting cases where the reasoning applies with full force. *See Home Depot*, 931 F.3d at

1085 (acknowledging that "Supreme Court precedents stretching from *Hensley* to *Perdue*" "are not binding outside the statutory context," but "adhering to precedent where its reasoning applies"). The precedential reasoning of statutory fee-shifting cases is inapplicable to a contractual fee-shifting cases where the reasoning is specific to statutory interpretation. *Id.*

The lodestar calculation begins by multiplying the hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 432 (1983). Then the court must determine whether an upward or downward adjustment to the lodestar is warranted. *Id.* at 434; *but see Home Depot*, 931 F.3d at 1091 (determining courts in the Eleventh Circuit may use the *Johnson* factors in determining the lodestar calculation itself, while the Supreme Court uses the factors in the adjustment stage to adjust the overall lodestar). The "lodestar," carries a strong presumption of reasonableness but may be adjusted by the court. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999); *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. The applicant must demonstrate reasonableness, which includes "supplying the court with specific and detailed evidence." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). Likewise, the opposing party must also submit specific and "reasonably

precise" objections and proof'. *Id.* at 1301. In addition, a court may use its own experience to assess the reasonableness of attorney's fees. *Id.* at 1303.

## A. REASONABLE RATES

This Order will first determine the reasonable hourly rates. The plaintiffs request the court find the following are reasonable hourly rates: (1) $550 per hour for Joseph Magri; (2) $200 per hour for Gerard Roble; (3) $489 per hour for Sean McFadden; (4) $125 per hour for Meagan Blackshear Ross-Culpepper; and (5) $165 per hour for Angela Merkle. (Doc. 192-14). The plaintiffs support their request with personal declarations and the declaration of Attorney Robert McCormack. The VA contends the requested hourly rates are well above the prevailing market rates in this jurisdiction. (Doc. 194, p. 9). The VA requests the court find the following are reasonable hourly rates: (1) $360 per hour for Joseph Magri; (2) $260 per hour for Sean McFadden; (3) $130 per hour for Gerard Roble; (4) $95 per hour for Meagan Blackshear Ross-Culpepper; and (5) a rate not to exceed $95 per hour for Angela Merkle.

The plaintiffs' attorneys describe the history of their fee agreements with their clients over the course of the case. (Doc. 192, p. 19). The plaintiffs assert the last amended fee agreement relates back to the beginning of the case and lists settlement fees as $425 per hour. They argue the reasonable fees they are

entitled to are higher than the fee agreement.[1] The VA contends the fee agreements do not relate back, and the plaintiffs' requested attorney's fees are not sufficiently supported.

The VA contends awarding the plaintiffs' attorneys rates significantly higher than what they received in *Griffith* would be unreasonable because at least 1,500 hours (75% of the requested hours) were billed prior to the *Griffith* ruling on attorney's fees. (Doc. 194, p. 9). *Griffith v. Wilkie*, No. 8:18-CV-432-T-CPT, 2020 WL 5814235 (M.D. Fla. Sept. 30, 2020), *aff'd in part, vacated in part sub nom. Griffith v. McDonough*, No. 20-14464, 2021 WL 4461605 (11th Cir. Sept. 29, 2021). In *Griffith*, the court awarded "the contracted hourly rates of $300 for Joseph Magri, $235 for Sean McFadden, $130 for Gerard Roble, $95 for Meagan Blackshear Ross-Culpepper, and $85 for Angela Merkle." 2020 WL 5814235 at *5. The plaintiffs argue *Griffith* is distinguishable from this case. They argue *Griffith* "actually just accepted our settlement rate to help federal employees, as our reasonable hourly rate, rather than determine our reasonable rate." (Doc. 199, p. 3). The controlling Settlement Agreement calls for the court to determine the reasonable hourly rate for each individual.

"A reasonable hourly rate is the prevailing market rate in the relevant

---

[1] The plaintiffs' attorneys explain their settlement rates and rates charged were below the reasonable market rate and designed to allow the plaintiffs to afford the litigation and encourage settlement.

community for similar legal services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, at 836 F.2d at 1299. The relevant legal community is the place where the case is filed. *Griffith*, 2020 WL 5814235 at *3 (citing *Barnes*, 168 F.3d at 437). The contractual rate between the attorney and client "is a strong indication of the reasonable rate." *Griffith*, 2021 WL 4461605 at *1 (11th Cir.) (quoting *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1337 (11th Cir. 2001)) However, the contracted rate is not dispositive of the court's determination.

"The party seeking attorneys' fees 'bears the burden of establishing that his requested rate is in line with prevailing market rates,' and this requires more than just 'the affidavit of the attorney performing the work.'" *Griffith v. McDonough*, 2021 WL 4461605 at *1 (11th Cir.) (quoting *Norman*, 836 F.2d at 1299)). The court, in its capacity as an expert on attorney's fees, "may consider its own knowledge and experience concerning reasonable and proper fees.'" *Norman*, 836 F.2d at 1303.

### i.    REASONABLE RATE FOR JOSEPH MAGRI

The plaintiffs request a reasonable hourly rate of $550 for Joseph Magri. The VA requests an hourly rate of $360. Attorney Magri became a licensed Florida attorney in 1989. (Doc. 192-1, p. 1). He has over 48 years of practice experience. (Doc. 192, p. 16). As recognized by the court in *Griffith*, and further supported by the record, Attorney Magri's "skills, experience, and reputation

are impressive." 2021 WL 4461605 at *1.

In 2010, Tampa Magistrate Judge Thomas B. McCoun awarded Mr. Magri an hourly rate of $350 in a Title VII case against the VA. The magistrate judge commented, "Based on my experience in handling matters of this sort . . . trial counsel billed at hourly rates ranging from $300 to $400 per hour for this type of work." *Fielder v. Shinseki*, No. 8:07-CV-1524-T-TBM, 2010 WL 1708621 at *3 (M.D. Fla. Apr. 26, 2010), *aff'd sub nom. Gowski v. Peake*, 682 F.3d 1299 (11th Cir. 2012). In 2020, this district in *Griffith* awarded Attorney Magri an hourly rate of $300. *See also Krop v. Nicholson*, No. 8:06-CV-157-T-MSS, 2008 WL 11439394 at *4 (M.D. Fla. Mar. 13, 2008) (awarding Attorney Magri a rate of $300 per hour in 2008).

The record does not support $550 as a reasonable hourly rate for Attorney Magri. The plaintiffs' fee agreements, historic market rates, and the courts own expertise are the relevant factors used to determine Attorney Magri's reasonable hourly rate. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) (determining prior awards may be relevant but, "a court should hesitate to give controlling weight to prior awards . . . over the superior evidence of a lawyer's actual billing rate"). The Settlement Agreement calls for the court to take "into consideration Plaintiffs' fee agreement." (Doc. 192, p. 4). In addition, the rate charged to the client is a "powerful" indicator of the attorney's reasonable market rate. *Griffith*, 2020 WL 5814235 at *3

8

(citing *Dillard*, 212 F.3d at 1345).

Over the course of the litigation the fee agreement was amended three times and Attorney Magri's rate changed. The initial 2009 fee agreement listed fees at $250 per hour. The 2017 fee agreement listed settlement fees at $350 per hour. And the final 2021 fee agreement listed settlement fees at $425 per hour.[2] The parties disagree whether the fee agreement amendments relate back to the beginning of the case. The highest rate Attorney Magri billed at over the course of the litigation was $425 per hour.

Although the fee agreement is not determinative on reasonable rates, upon review the court finds $425 per hour is a reasonable hourly rate for Attorney Magri for all work done since the beginning of the case.

The court acknowledges the plaintiffs' expert declaration from Attorney McCormack citing cases awarding attorney's fees in the Middle District in the range of $425 to $500 for less experienced attorneys but declines the invitation to increase the rate. The cases Mr. McCormack relied on to justify his expert opinion are distinguishable from this case. Two of those cases went to trial and the fees were unopposed. This case was settled before trial. The other case is outside the context of employment law.

---

[2] Paragraph 7, "Court Awarded Fees," states, "Nothing in the Agreement should be interpreted to limit the firm's reasonable hourly rate to the rate charged to give Clients the ability to litigate against the government." (Doc. 192-16, p. 8).

In addition to relying on its own expertise in determining attorney's fees, the court declines to award a downward departure because in 2010 a reasonable fee for this type of work was found to be between $300 and $400 per hour. Attorney Magri's skill, expertise, and reputation has only increased over this time.

Therefore, the rate of $425 per hour is the reasonable rate for Attorney Magri. *See Griffith*, 2021 WL 4461605 (11th Cir. Sept. 29, 2021) (affirming the Magistrate judge's determination in a contractual fee-shifting case that the contractual fee rate for Attorney Magri was a reasonable rate despite the plaintiff's argument the agreed upon rates were discounted from the market rate).

### ii.    REASONABLE RATE FOR SEAN MCFADDEN

The plaintiffs request a reasonable hourly rate of $489 for Sean McFadden. The VA requests an hourly rate of $260. Attorney McFadden became a licensed Florida attorney in 2015. (Doc. 192-10, p. 1). He has accumulated over a decade of experience in civil litigation with a majority of that time being spent on civil rights and federal employment matters. (*Id.*).

Over the course of this litigation, Attorney McFadden billed at a rate of $180, $210, $250, and $300 per hour. Attorney McFadden's personal declaration and expert McCormack's declaration assert the reasonable hourly rate is $489 per hour. Attorney McFadden argues $489 per hour is reasonable

10

because it is the rate the EEOC awarded in *McGinn v. McDonough*, *Sec'y Dept. of Veterans Affairs*, EEOC Appeal No. 2021001021 (March 7, 2022). (Doc. 192-10, p. 2).

Upon review of the record, the plaintiffs' requested rate of $489 is unreasonably high. The requested rate represents a 63% increase of the highest contractual rate ($300/hr) Attorney McFadden charged over the course of the case. *See Griffith*, 2020 WL 5814235 at *5 (finding a rate of $350 per hour for Attorney McFadden was too high considering the rate represented "roughly a 50% hike of the agreed-upon rates" when relying on the contractual settlement rates among other factors). However, the VA's requested rate of $260 per hour is unreasonably low given the contracted rate and Attorney McFadden's experience in federal employment cases. Based on the last actual rate charged and the court's own experience, the reasonable rate for Attorney McFadden is $300 for all work done since the beginning of the case. This award accounts for, without solely relying on, the historic market rates, in addition to Attorney McFadden's expertise in federal employment litigation.

### iii.    REASONABLE RATE FOR GERARD ROBLE

The plaintiffs' request a reasonably hourly rate of $200 per hour for Attorney Roble. The VA requests an hourly rate of $130. Attorney McCormack's expert declaration suggests Attorney Roble's reasonable rate is $275 per hour. Attorney Roble became licensed in the State of Florida in 1987

11

and retired in 2019. (Doc 192-1, p. 2). The plaintiffs state the settlement rate for Attorney Roble was $200 per hour. (Doc. 192, p. 20). Attorney Roble worked on the case until September 2019 and charged $130 per hour. Upon reviewing the record, it appears Attorney Roble's role in the case heavily consisted of discovery, research, and document review and production.

The plaintiffs have not met their burden to establish the requested rate is aligned with the prevailing market rate. In 2020, this district awarded Attorney Roble an hourly rate of $130. In 2021, the decision was affirmed by the Eleventh Circuit. Attorney Roble retired and ceased working on this case in 2019. Therefore, in accordance with *Griffith*, and the contractual rate charged to the plaintiffs, Attorney Roble's reasonably hourly rate is $130 for all work since the beginning of the case.

### iv.  REASONABLE RATE FOR MEAGAN BLACKSHEAR ROSS-CULPEPPER

The plaintiffs request a reasonable hourly rate of $125 per hour for attorney Ross-Culpepper. The plaintiffs state the settlement rate for Attorney Ross-Culpepper was $125 per hour. (Doc. 192, p. 20). The VA requests an hourly rate of $95. Attorney Ross-Culpepper was admitted to the Florida bar in April 2018, "prior to [being admitted], but after graduation and passing the Bar, she worked at [the plaintiffs' attorneys law firm] as a paralegal." (Doc. 192-1, p. 3).  As a paralegal Ms. Ross-Culpepper charged $95 per hour. As an

attorney Ms. Ross-Culpepper charged $175 per hour.

Courts in this jurisdiction have found a reasonable paralegal rate to be between $95–$150 per hour. *See Lemoine v. Copalo, Inc.*, No. 8:22-CV-702-JSM-AEP, 2024 WL 1961490 at *2 (M.D. Fla. Jan. 24, 2024) (finding $110 per hour a reasonable rate for paralegals in "employment discrimination lawsuits filed in the United States District Court for the Middle District of Florida"); *Fed. Trade Comm'n v. Legion Media, LLC*, No. 8:24-CV-1459-JLB-AAS, 2025 WL 1195544 (M.D. Fla. Apr. 8, 2025), *report and recommendation adopted*, No. 8:24-CV-1459-JLB-AAS, 2025 WL 1195906 (M.D. Fla. Apr. 24, 2025) (finding $150 per hour a "generous" reasonable rate in a Federal Trade Commission Act case); *Butdorf v. SC Maint., Inc., No. 8:15-CV-916-T-23TGW, 2015 WL 9694516 (M.D. Fla. Dec. 7, 2015), report and recommendation adopted,* No. 8:15-CV-916-T-23TGW, 2016 WL 112372 (M.D. Fla. Jan. 11, 2016) (finding $95 per hour a reasonable rate in a FSLA case).

Relying upon the courts own expertise, and considering Ms. Ross-Culpepper became an attorney, and charged $175 per hour, a blended rate of $125 per hour is a reasonable rate for Attorney Ross-Culpepper for all work since the beginning of the case.

## v.    REASONABLE RATE FOR ANGELA MERKLE

The plaintiffs request a reasonable hourly rate of $165 per hour for Paralegal Angela Merkle. The VA requests an hourly rate of $95. Ms. Merkle

has been a paralegal with the plaintiffs' firm since 1996. The plaintiffs state the settlement rate for Ms. Merkle was $100 per hour. (Doc. 192, p. 20). The highest rate Ms. Merkle charged per hour was $100. The record indicates Ms. Merkle has substantial experience in federal employment cases under Title VII.

Relying upon its own expertise and considering the contracted rate and Ms. Merkle's substantial experience Ms. Merkle's reasonable hourly rate is $100 per hour. This rate also considers, without solely relying on, the historic market rates for paralegals in similar employment cases as cited above.

## B. REASONABLE HOURS

This Order will next determine the number of hours reasonably expended on the litigation. The plaintiffs request fees on a total of 1,998.1 hours. (Doc. 192, p. 11). This time includes the time spent on both the administrative and federal court proceedings by Joseph Magri, Gerard Roble, Sean McFadden, Megan Ross-Culpepper, and Angela Merkle. In total, the VA requests an across-the-board reduction of at least 80% of the hours.[3] (*See* Doc. 194). There are two central issues. The first issue is billing, including the

---

[3] Specifically, the VA requests the following across-the-board reductions: (1) at least a 25% reduction for the plaintiffs' unsuccessful claims; (2) at least a 25% reduction for vague and block-billed entries; (3) at least a 5% percent reduction for non-compensable clerical tasks; (4) at least a 5% percent reduction for non-compensable independent legal tasks; and (5) at least a 20% reduction for duplicative and excessive tasks.

sufficiency of the documentation for the hours billed and the type of work billed. The second issue is whether hours should be offset for the dismissal of unsuccessful claims.

"To prevail in their request for attorney's fees, the moving party must present accurate records that detail the work the timekeepers performed." *Jacob v. Bais Yisroel Cmty. Ctr. of Tampa Bay, LLC*, No. 8:23-CV-2703-KKM-AAS, 2024 WL 4103601 at *4 (M.D. Fla. Aug. 23, 2024), *report and recommendation adopted* (Sept. 10, 2024). Attorneys must exercise billing judgment, which "means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours, which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Barnes*, 168 F.3d at 428 (quotations and citations omitted).

If the moving party requests compensation for unreasonably high hours expended on a case, a district court may either "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350. An across-the-board reduction is appropriate to avoid the "pick and shovel work" of analyzing billing records. *Kenny A. v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008), *rev'd on other grounds*, 559 U.S. 542 (2010). "Trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough

15

justice, not to achieve auditing perfection. So, trial courts may consider their overall sense of a suit and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Because the billing record consists of nearly 200 pages of records and runs from 2015 through 2025 the court will consider whether an across-the-board reduction is warranted. *Cozzolino v. Staff*, No. 8:24-CV-01349-AAS, 2025 WL 1721707 at *2 (M.D. Fla. May 8, 2025) ("Rather than go line by line and identify every troublesome billing record, the court will just focus on certain areas that justify the ultimate across-the-board reduction.").

    "Hours that are excessive, redundant, or otherwise unnecessary should be pruned from a fee application." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, No. 09-80918-CIV-MARRA/JOHNSON, 2011 WL 13108095, at *7 (S.D. Fla. Apr. 7, 2011); *see also Hazleton v. City of Orlando*, No. 6:10-cv-342-Orl-36DAB, 2013 WL 5952427, at *6 (M.D. Fla. Nov. 4, 2013) ("[A] reduction is warranted where the attorneys are unreasonably doing the same work or have made it impossible for the court to recognize the distinct contributions of each lawyer."). The fee applicant also bears the burden of providing specific and detailed evidence so that the court can determine the necessity and reasonableness of the time claimed for the task. *Hensley*, 461 U.S. at 427, 432–33. Likewise, "objections and proof from fee opponents" "must be reasonably precise." *Norman*, 836 F. 2d at 1301. In the end, however,

16

"exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.

The plaintiffs' counsel claims they are entitled to fees on a total of 1,998.1 hours for time spent on the administrative and federal court proceedings. The breakdown is as follows: 1,052.2 hours for Joseph Magri; 221 hours for Sean McFadden; 155 hours for Gerard J. Roble; 83.5 hours for Megan Ross-Culpepper; and 486.4 hours for Angela Merkle. As discussed, the VA seeks a significant reduction.

### i.    BILLING

The VA argues for reduction in the reasonable hours expended on the litigation because the billing records contain vague and block-billed entries, non-compensable clerical tasks, non-compensable work for independent legal proceedings, and duplicative and excessive entries.

A reduction in hours is appropriate where the description of work "does not describe the billed task in sufficient detail for the district court . . . to evaluate the necessity of the task and whether the time billed for the task was reasonable." *Otto v. City of Boca Raton, Fla.*, No. 24-10478, 2025 WL 2952783 at *5 (11th Cir. Oct. 20, 2025) Vague billing entries are "particularly problematic because it makes determining redundancy or duplication difficult." *Eaton v. Principal Life Ins. Co.*, No. 8:20-CV-61-KKM-JSS, 2023 WL 5804263 at *7 (M.D. Fla. Aug. 7, 2023) (quoting *Lanard Toys Ltd. v.*

17

*Dolgencorp, LLC*, No. 3:15-CV-849-MMH-PDB, 2022 WL 1597276 at *25 (M.D. Fla. Feb. 2, 2022)). In *Otto*, the Eleventh Circuit determined the billing entries of: "'[c]ontinued drafting of motion for preliminary injunction,' 'prepare initial disclosures,' and '[a]ttention to preparing search terms and identifying document custodians for discussion with defense counsel in response to discovery requests' all describe the billed task in sufficient detail." 2025 WL 2952783 at *5.

Upon review of the billing records, an across-the-board reduction is warranted for vague entries. Numerous billing entries are vague because they do not describe the subject matter of the work done with sufficient detail for the court to analyze the services performed or the reasonableness of the time spent.[4] (Doc. 192-3). For example, numerous entries are described as "review email client" or similar variations without an attached subject matter. These descriptions differ from the non-vague descriptions in *Otto* because they are not accompanied by a further description. Without a description of the subject matter the court is unable to determine the services performed or reasonableness of the time spent. *Cf. Otto*, 2025 WL 2952783 at *5 (determining the billing descriptions were not vague because "nowhere in

---

[4] The plaintiffs argue their "billing statements set out with sufficient particularity the subject matter of the time expenditures, as long as one does not place their head in the ground." (Doc. 199, p. 5).

counsel's billing records were any of the listed terms [like 'drafting,' 'preparing,' giving 'attention to,' or 'considering strategy'] used without further explanation.").

Likewise, block billing warrants a reduction in hours. *See Eaton*, 2023 WL 5804263 at *7. Block billing "occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). Block billing warrants a reduction when it "obstructs a court's determination of the number of hours reasonably expended on the litigation when a single billing entry includes both compensable and noncompensable tasks or when the time spent on one or more of the block-billed tasks may be excessive." *Otto*, 2025 WL 2952783 at *5. However, a reduction in hours for block billing is not necessary if the entries "do not impede the court's task of calculating a reasonable fee award because they describe only closely related compensable activities billed in small blocks of time that are easily assessed for reasonableness." *Id.* For example, in *Otto* the Eleventh Circuit determined a block-billed entry to "[r]eceive and review email correspondence from Hamilton re[garding] providing initial responses to discovery request; [and] review same and consider incorporation into responses" did not warrant a reduction in hours. *Id.* The court reasoned "[e]ntries like these that do not include excessive, redundant, or otherwise

19

unnecessary activities do not support a reduction in billable hours" and "easily passes review for necessity and reasonableness." *Id.*

The plaintiffs argue there should be no reduction for block billing because the entries are intertwined and set out with sufficient particularity. (Doc. 199, p. 5). The VA contends "lump[ing] together multiple tasks . . . into one entry with no time allocation or further detail . . . frustrates . . . the Court's ability to 'ascertain how much time was spent on each task.'" (Doc. 194, p. 15) (citing *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012).

Upon review, the court finds a minor reduction in hours for block billing is warranted. Many of the entries the VA highlights as block-billed entries (Doc. 192-3) are intertwined entries set out with sufficient subject matter particularity allowing the court to determine the billed hours were reasonable. (*See e.g.* Doc. 192-3, pp. 22, 24). However, some entries are not described with sufficient particularity. (*See e.g.* Doc. 192-3, p. 13). Therefore, a minor across-the-board reduction is necessary to account for the instances of block billing where the description frustrates the court's ability to assess the reasonableness of the time spent on each task.

The VA also moves for a reduction of hours for non-compensable clerical tasks billed. "A fee movant can recover only for a service 'traditionally done' by an attorney." *Eaton*, 2023 WL 5804263 at *6 (citing *Jean v. Nelson*, 863 F.2d

759, 778 (11th Cir. 1989)). "Clerical work, such as the compilation of facts and statistics, coordinating schedules, basic communications, procedural matters, and housekeeping matters, is usually performed by legal assistants, not lawyers." *Id.* (citation omitted); *see Otto*, 2025 WL 2952783 at *6 (identifying "electronic filing and service, organizing exhibits, scheduling, and contacting the court for updates" as nonbillable clerical activities). Purely clerical tasks are not billable, even at a paralegal rate. *Id.* (citation omitted).

Upon review, clerical tasks are included in the billing records.[5] Many of the purely clerical entries are for a relatively small number of hours. In addition, some purely clerical entries are included in larger block-billed entries. However, many of the entries identified by the VA as clerical were properly billed tasks. Therefore, only a minor reduction is warranted commensurate with the time spent on the non-compensable tasks, and without striking the entirety of otherwise valid block-billed entries. *Id.*; *see Eaton*, 2023 WL 5804263 at *5 (recommending "an across-the-board reduction that takes time spent on clerical tasks into consideration.").

Work done on independent legal proceedings is also non-compensable. The VA argues "time spent on Hollingsworth's USERRA action and whistleblower claim . . . are [non-compensable] distinct legal proceedings." The

---

[5] The clerical tasks include tasks done by Ms. Merkle and Attorney Roble such as calendaring dates, scheduling, assembling documents, and filing documents.

VA supports this claim by highlighting certain billing entries as "Work related to independent actions" in purple. (Doc. 194, p. 17). Ms. Merkle's declaration (Doc. 199-3) counters the VA claims and describes in detail that the plaintiffs' firm was diligent to not double bill. Relying on Ms. Merkle's declaration that the plaintiffs' counsel was diligent to ensure no double billing occurred, and the necessity to discuss the matters at issue with the clients due to the "mixed nature" of the claims the court finds a reduction in hours is not warranted. The hours billed to determine to what extent the claims were properly billed towards the USERRA action, or the whistleblower claim were reasonable.

Lastly, the VA requests a reduction in hours for duplicative and excessive billing. *Eaton* lays out the controlling rules and the court's obligation as follows:

> "Hours that are excessive, redundant, or otherwise unnecessary should be pruned from a fee application." *Creative Choice Homes XXX, LLC*, 2023 WL 2817366, at *6 (internal quotation marks and citation omitted). "Redundant hours generally occur where more than one attorney represents a client." *Norman*, 836 F.2d at 1301–02. While courts must "closely scrutinize cases where more than one attorney is involved for possible duplication of effort," *Preson v. Mandeville*, 451 F. Supp. 617, 641 (S.D. Ala. 1978), there "is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 835 F.3d at 1302; *see also Hazleton v. City of Orlando*, No. 6:10-cv-342-Orl-36DAB, 2013 WL 5952427, at *6 (M.D. Fla. Nov. 4, 2013) ("[A] reduction is warranted where the attorneys are unreasonably doing the same work or have made it impossible for the Court to recognize the distinct contributions of each lawyer.").

*Eaton*, 2023 WL 5804263 at *5. Regarding excessive billing, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Id*. at *6 (citing *Am. C.L. Union of Ga.*, 168 F.3d at 428).

Upon review and relying on the court's own expertise, an across-the-board reduction is warranted for duplicative and excessive billing. Although attorneys may conference with each other and each attorney may properly bill for the time, here, the conferencing appears excessive. *See Otto*, at *6 ("Some internal discussion is necessary and expected when multiple attorneys are assigned to a case"). The court notes, without doubly penalizing by reducing hours, that the vagueness of some billing entries and the volume of the billing entries creates a challenge to determine if various emails, conferences, and reviews were redundant. *See Fox*, 563 U.S. at 838 (The essential goal in shifting fees (to either party) is to do rough justice"). An across-the-board reduction is necessary, although not the extent requested by the VA, to account for excessive and redundant billing.

Accordingly, the reasonable hours are reduced by 20% across-the-board. This reduction accounts primarily for vague, duplicative, and excessive tasks. It also factors in block-billed entries and work done on non-compensable

23

clerical tasks. Consequently, the lodestar calculation is represented by this chart:

| | Reasonable Rate | Reasonable Hours | Pre-reduction total | Reduction | Total |
|---|---|---|---|---|---|
| **Magri** | **$425/hr** | **1,052.2** | **$447,185** | **20%** | **$357,748** |
| **McFadden** | **$300/hr** | **221** | **$66,300** | **20%** | **$53,040** |
| **Roble** | **$130/hr** | **155** | **$20,150** | **20%** | **$16,120** |
| **Ross-Culpepper** | **$125/hr** | **83.5** | **$10,437.5** | **20%** | **$8,350** |
| **Merkle** | **$100/hr** | **486.4** | **$48,640** | **20%** | **$38,912** |
| **Lodestar** | | | | | **$474,170** |

## ii.    UNSUCCESSFUL CLAIMS

The plaintiffs argue no reduction in hours is warranted for their unsuccessful claims. (Doc. 192, ¶¶ 10−12). The plaintiffs, relying on *Home Depot*, argue that a prevailing party limitation on fees does not apply because the Settlement Agreement contained no such limitation. (*See Id.*). They argue the time spent, including time on successful claims, was reasonable and properly charged to the clients given the claims involved a common core of

facts. (Doc. 42, ¶¶ 11−12). The VA argues a reduction in fees is appropriate where the plaintiff obtains only partial or limited success.

When awarding fees pursuant to a settlement agreement, which contains no prevailing party limitation, the limitation does not apply, and the court does not need to deduct time spent on discrete and unsuccessful claims. *Home Depot*, 931 F.3d at 1087; *Griffith*, 2020 WL 5814235 at *7 (rejecting "[t]he position that it should now be excused from paying the reasonable fees incurred as a result of the entirety of the litigation" where the settlement agreement provided for the VA to pay reasonable attorney's fees as determined by the court with no prevailing party limitation).

The plaintiffs are correct in the sense that the statutory prevailing party limitation does not apply. *See Home Depot*, 931 F.3d at 1087 (finding because "the fees are awarded pursuant to a contract, not a statute, and there is no prevailing-party limitation in the settlement agreement" that "the prevailing party limitation does not apply, and the District Court did not need to deduct time spent on discrete and unsuccessful claims").

However, a reduction in fees is still warranted. The reduction is warranted not based upon a prevailing party theory but rather based upon the "results obtained" factor, which is considered in determining reasonable fees pursuant to the Settlement Agreement. *See Home Depot*, 913 F.3d at 1091 ("We [the Eleventh Circuit] use the *Johnson* factors to adjust the hourly rate, the

Supreme Court uses the *Johnson* factors to adjust the overall lodestar.").[6]

Although *Hensley* and the subsumed lodestar factors come from statutory cases, thus non-binding on this contractual case, *Hensley's* reasoning on the results obtained factor on the lodestar has precedential value. *Hensley* states:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? "[t]his [results obtained] factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief."

*Id.* at 434. The above language indicates the results obtained factor is *crucial* in statutory cases where fees are granted to the prevailing party. Yet, the language quoted above from *Hensley*, combined with the Eleventh Circuit's decision to "not lightly cast aside the statutory fee-shifting precedent if its reasoning applies with full force" in *Home Depot*, indicate the results obtained factor remains an *important* factor subsumed within the court's lodestar

---

[6] Here, the results obtained factor is used to adjust the overall lodestar. In making this calculation the court was careful to not doubly penalize the plaintiffs for factors subsumed in the lodestar calculation represented by the chart.

calculation in a contractual fee-shifting case. The reasoning applies here because the lodestar method is used to determine reasonable attorney's fees in contractual fee-shifting agreements and "results obtained" is a factor subsumed by the lodestar calculation. *See Home Depot*, at 1091. Therefore, to determine the final amount of reasonable attorney's fees the court analyzed whether "the plaintiff[s] achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434; *see Norman*, 836 F.2d at 1302 ("If the result was partial or limited success, then the loadstar must be reduced to an amount that is not excessive").

Upon review, a 20% downward adjustment to the lodestar is warranted. *See Vidovic v. City of Tampa*, No. 8:16-CV-714-T-17CPT, 2018 WL 4603294 at *3 (M.D. Fla. May 3, 2018) (reducing the lodestar by 20% in a pregnancy discrimination and Title VII retaliation case that went to trial); *Martinez v. Hernando Cnty. Sheriff's Off.*, 579 F. App'x 710, 715 (11th Cir. 2014) (finding the district court did not abuse its discretion in reducing the lodestar figure by 75%).[7] Following the 20% downward adjustment the total attorney's fee award is $379,336.

The reduction is warranted not based upon the unsuccessful claims

---

[7] The court does not rely on the prevailing party limitation present in *Vidovic* or *Martinez*. The district court may adjust the lodestar for "results obtained." *See Hensley*, 461 U.S. at 434.

themselves but is based upon the overall results obtained. *See Norman*, 836 F.2d at 1302 ("A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole"). The plaintiffs request attorney's fees on a total of 1,998.1 hours (amounting to over $800,000 in attorney's fees). (Doc. 192, p. 11). Minus reasonable attorney's fees, the plaintiffs' attorneys achieved the following results: (1) a total settlement sum of $175,000; (2) a favorable modification of Ms. Sly's 2015 and 2016 performance appraisals; and (3) a favorable modification of Ms. Hollingsworth's SF-50 to reflect a resignation. Although successful, the plaintiffs' case generated a lodestar significantly above the results obtained. In other words, the relief obtained was limited in comparison to the scope of the litigation as a whole. *Norman*, 836 F.2d at 1302. Therefore, accounting for the 20% downward adjustment, the plaintiffs are entitled to a total of $379,336 in attorney's fees.

### C. COSTS AND FEES ON FEES

The plaintiffs also seek post settlement fees and costs. (Doc. 192, p. 25). In support the plaintiffs filed a Supplemental Motion for Attorneys Fees and Costs. (Doc. 200). The VA responded in opposition. (Doc. 202).

As an initial matter, the plaintiffs are not entitled to costs or fees under prevailing party fee-shifting statues because the plaintiff is not a prevailing party and this is a contractual fee-shifting case, not a statutory fee-shifting

case. The Settlement Agreement contract controls whether the plaintiffs are entitled to costs and fees for litigating reasonable attorney's fees (fees on fees).

The VA contends it only agreed to pay reasonable attorney's fees and that it never agreed to pay costs. (Doc. 194, p. 20). The plaintiffs "believed costs were inherently part of the settlement because Defendant agreed to reasonable fees in this type of case." (Doc. 199, p. 7). Importantly, the plaintiffs acknowledge the VA objected to putting "costs" in the Settlement Agreement. (Doc. 199, p. 7) ("Defendant objected to putting those words [referring to "costs" language] in the settlement agreement"). Despite being aware of the VA's objection to including costs in the Settlement Agreement the plaintiffs now argue they did not "agree because the cases cited on pages 24, 25 of our motion establish cost are part of reasonable fees." (Doc. 199, p. 7).

The court is presented with a contractual interpretation dispute, whether "reasonable attorney's fees" includes costs and fees on fees. "Only when the terms of a contract are ambiguous or susceptible to different interpretations is parol evidence admissible to "explain, clarify or elucidate" the ambiguous term." *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1214 (M.D. Fla. 2007) (citation omitted). Here, exactly what costs and fees are included in the term "reasonable attorney's fees" is ambiguous. Upon consideration of the parties' briefs, it appears the VA did not intend for costs or fees for litigating fees to be included in the Settlement Agreement. In

addition, it appears the plaintiffs were aware of the VA's position and yet they still executed the Settlement Agreement with the intention to dispute whether costs and fees on fees were included within the meaning of "reasonable attorney's fees." Indeed, the VA "expressly refused to include such provision for fear that the Court may mistakenly infer that Defendant was agreeing to pay fees on fees." (Docs. 202, p. 5; 199-8, pp. 13, 15). Accordingly, the plaintiffs are not entitled to costs or fees on fees for litigating reasonable attorney's fees.

## III.    CONCLUSION

For the reasons stated above the plaintiffs' motion for attorney's fees (Doc. 192) is **GRANTED** in part. The plaintiffs are entitled to a total award of **$379,336** in attorney fees. The plaintiffs request for costs and fees on fees (Doc. 200) is **DENIED**.

Ordered in Tampa, Florida, on December 11, 2025.


_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge